# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

---

### In re GREGORY B. THOMPSON and
### PATRICIA A. THOMPSON,
### Civil No. 1:06-cv-02843

---

**Judge Dan Aaron Polster**

**SAUL EISEN**
**United States Trustee, Region 9**

**Appellant**

v.

**GREGORY B. THOMPSON and,**
**PATRICIA A. THOMPSON**

**Appellees**

---

**On Appeal from the United States Bankruptcy Court**
**for the Northern District of Ohio**
**Eastern Division**

---

**BRIEF OF THE APPELLANT SAUL EISEN**
**UNITED STATES TRUSTEE**

---

**SAUL EISEN**
**UNITED STATES TRUSTEE**
**REGION 9**

**Dean P. Wyman**
Senior Trial Attorney
Department of Justice
Office of the U.S. Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Ave. , Suite 441
Cleveland, Ohio 44114
(216) 522-7800 ext. 23
(216) 522-7193 Fax

Of Counsel

**P. Matthew Sutko**
**David Levine**
Executive Office for United States Trustees
Department of Justice
20 Massachusetts Avenue NW
Suite 8000
Washington, D.C.  20530
(202) 307-1399

## TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES .................................................. iii

STATEMENT OF JURISDICTION ............................................. 1

STATEMENT OF ISSUES PRESENTED ........................................ 1

STANDARD OF REVIEW .................................................... 2

STATEMENT OF THE CASE ................................................. 3

STATEMENT OF FACTS .................................................... 4

    1. Statutory Framework ............................................ 4

        a.  Overview of 11 U.S.C. § 707(b)(2) ................................ 4

        b.  Rebutting the Presumption of Abuse: Special Circumstances ......... 7

    2. Factual Background ............................................. 8

SUMMARY OF ARGUMENT .................................................. 11

ARGUMENT ............................................................. 13

  I.  The court below erred by denying the United States Trustee's motion to dismiss
     on the ground section 707(b)(2)(A)(iii) permits debtors to deduct retirement
     account loan repayments as secured debts in determining ability to repay
     because such loan repayments are not "debts" or "secured" obligations within
     the meaning of the Bankruptcy Code .................................... 13

     A.  The court below found Mr. Thompson's loan repayments to be "secured
       debts" under section 707(b)(2)(A)(iii), but to be such it had to be (1) a "debt"
       and (2) "secured" under the Bankruptcy Code ....................... 13

     B.  Because it was not a "debt" under the Bankruptcy Code, the court below
       erred in ruling that Mr. Thompson's loan repayment was an allowable
       "secured debt" expense under section 707(b)(2)(A)(iii) ................. 14

i

    C.   Alternatively, because Mr. Thompson's retirement loan obligations are not"secured" within the meaning of the Bankruptcy Code, the court below erred in ruling that the obligations were "secured debts" due to a "secured creditor" within the meaning of 11 U.S.C. § 707(b)(2)(A)(iii) . . . . . . . . . . . 18

    D.   Requiring the debtors to commit to a repayment plan under chapter 13 best comports with the explicit and reasonable public policy objectives of Congress by allowing the debtors to repay Mr. Thompson's 401(k) loan while also allowing a substantial repayment to creditors . . . . . . . . . . . . . . . . . . . . . 22

II.  The bankruptcy court abused its discretion by holding that Mr. Thompson's 401(k) plan loan repayments constituted "special circumstances" sufficient to rebut the presumption of abuse under section 707(b)(2) . . . . . . . . . . . . . . . . . . . 25

    A.   Under doctrine of *ejusdem generis*, only circumstances similar in nature to the categories of special circumstances identified in section 707(b)(2)(B) qualify as "special circumstances." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    B.   The debtors had reasonable alternatives to repaying Mr. Thompson's 401(k) loan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    C.   Adjustments to expenses under section 707(b)(2)(B) is limited to categories of expenses allowed under section 707(b)(2)'s means test . . . . . . . 28

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

**CASES**                                                                                                                  **Page(s)**

*Blue Cross & Blue Shield Mut. V. Blue Cross & Blue Shield Ass'n*, 110 F. 3d 318, 322 (6th Cir. 1997) ........................................................................ 3

*In re Eagle-Picher Indus., Inc.*, 285 F. 3d 522, 529 (6th Cir. 2002) ...................... 3

*In re Castle*, Case No.: 06-30266 (RLS)(Bankr. N.D. Ohio Sept. 11, 2006) ............... 26

*In re Cohen*, 246 B.R. 658, 667 (Bankr. D. Colo. 2000) ............................... 16

*In re Esquivel*, 239 B.R. 146, 151 (Bankr. E.D. Mich. 1999) ...................... 15,16

*In re Fulton*, 211 B.R. 247 (Bankr. S.D. Ohio 1997) .............................. 16, 21

*In re Gary's Elec. Serv. Co.*, 340 F. 3d 373, 378 (6th Cir. 2003) ......................... 3

*In re Hanks*, 2007 WL 60812 (Bankr. D. Utah 2007) ............................... 26

*In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006) ............................. 14

*In re Isaacman*, 26 F. 3d 629, 631 (6th Cir. 1994) ................................. 2

*In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006) ............................... 29

*In re Johns*, 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006) ........................... 27

*In re Jones*, 138 B.R. 536, 537-38 (Bankr. S.D. Ohio 1991) ......................... 17

*In re Lenton*, -- B.R. --, 2006 WL 3850011 at * 6 (Bankr. E.D. Pa. 2006) ........... 22, 23

*In re Miller*, 907 F. 2d 80, 82 (8th Cir. 1990) ................................... 20

*In re Pensignorkay, Inc.*, 204 B.R. 676, 683 (Bankr. E.D. Pa.1997) ................. 20, 21

*In re Prosper*, 168 B.R. 274, 277 (Bankr. D. Conn. 1994) ........................... 15

*In re Schaffrath*, 214 B.R. 153, 154 (6th Cir. BAP 1997) ........................... 2

*In re Scott*, 142 B.R. 126, 127-31 (Bankr. E.D. Va. 1992) ......................... 16, 17

*In re Sparks*, Case No.: 06-10112, slip. Op. At 9 (Bankr. E.D. Tex. Oct. 18, 2006) ......... 28

*In re Trammer*, 2006 WL 3366458 (Bankr. D. Mont. Nov. 16, 2006) ................. 28

*In re Villarie*, 648 F.2d 810 (2d Cir. 1981) ..................................... 16

*In re Zick*, 931 F. 2d 1124, 1126 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Johnson v. Home State Bank*, 501 U.S. 78, 84-85, n.5 (1991) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lamie v. United States Trustee*, 540 U.S. *526*, 534 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Morgenstern v. Revco, D.S., Inc.. (In re Revco D.S. Inc.) 898 F. 2d 498, 500 (6th Cir. 1990)* . . 1

*Morrisette v. United States*, 342 U.S. 246, 263 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mullen v. United States (In re Mullen)*, 696 F.2d 470 (6thCir. 1983) . . . . . . . . . . . . . . . . 16, 17

*Patrick v. Commissioner, T.C.* Memo 1998-30 at *3, *aff'd* 181 F.3d 103 (6thCir. 1999) . . . . . 23

*Patterson v. Shumate*, 504 U.S. 753, 758-760 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 522, 558 (1990) . . . . . . . . . . . . 15

*Salinas v. United States*, 522 U.S. 52, 63 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Standard Oil Co. v. United States*, 221 U.S. 1, 59 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) . . . . . . . . . . . . . . . . . . 14

*Woods v. Simpson*, 46 F. 3d 21, 23 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## STATUTES

11 U.S.C. § 101(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11 U.S.0 § 101(51B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

11 U.S.C. §101(10A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11 U.S.C. §101(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11 U.S.C. §101(37) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

11 U.S.C.§102(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

11 U.S.C. §103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

11 U.S.C. §109(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

11 U.S.C. §362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11 U.S.C. § 506(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

11 U.S.C. § 506(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

11 U.S.C. §§ 521 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11 U.S.C. § 524 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

11 U.S.C. § 541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

11 U.S.C. § 541(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

11 U.S.C. § 541(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

11 U.S.C. §704(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11 U.S.C. §704(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

11 U.S.C. §707(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

11 U.S.C. §707(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

11 U.S.C. §707(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

11 U.S.C. § 707(b)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11 U.S.C. §707(b)(2)(A)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 707(b)(2)(A)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 13,18, 19

11 U.S.C. § 707(b)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3, 7

11 U.S.C. § 707(b)(2)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 25

11 U.S.C. § 707(b)(2)(A)(ii), (iii), and (iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 707(b)(2)(B)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11 U.S.C. §707(b)(2)(B)(I.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

11 U.S.C. § 707(b)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11 U.S.C. §707(b)(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

11 U.S.C. §1104(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

11 U.S.C.§1112(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

11 U.S.C. §1208( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

11 U.S.C. §1307( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

11 U.S.C. §1322(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 28

11 U.S.C. § 1325(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11 U.S.C. §1325(b)(4)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

11 U.S.C. §1329 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

26 U.S.C. §72(p)(1),(p)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. § 157(a) and (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 158(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 158(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 581 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

28 U.S.C. §586(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

28 U.S.C. § 1334(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. §1106. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. §1108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## RULES AND ORDERS

Fed. R. Bankr. P. 8002(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Bankr. P. 4004(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Bankr. P.4004( c ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Interim Fed. R. Bankr. P. 1007(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Second Amended General Order No. 2005-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

## OTHER AUTHORITIES

141 Cong. Rec. S11683, S11702)(Dec. 7, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

151 Cong. Rec. S1856 (Mar. 1, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1978 U.S. Code Cong. & Ad. News 5787, 6267 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

H.R. Rep. No. 109-31, pt. 1, at 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

S. Rep. No. 989, 95th Cong. 2d Sess. 23 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . : . . . . . . 15

*2A Norman J. Singer, Sutherland Stat and Statutory Construction* §4717,
at 188 (5th Cir. 1992)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . 26

## STATEMENT OF JURISDICTION

The bankruptcy court had jurisdiction over these debtors' chapter 7 bankruptcy case under 28 U.S.C. §§ 157(a) and (b), and, 1334(a).  Those provisions also gave the bankruptcy court jurisdiction to decide the United States Trustee's[1] motion to dismiss these debtors' bankruptcy case for abuse under 11 U.S.C. § 707(b).  The bankruptcy court denied the United States Trustee's motion by order entered September 26, 2006.  The United States Trustee timely appealed that order under 28 U.S.C. § 158(c)(2) and Fed. R. Bankr. P. 8002(a) on October 4, 2006.  This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1).

## STATEMENT OF ISSUES PRESENTED

In 2005, Congress and the President amended section 707(b) of the Bankruptcy Code to prohibit debtors who possess above median income from obtaining chapter 7 relief, absent special circumstances, whenever their income, less allowable expenses, as calculated under a statutory means test, exceeds a specified amount.  In this case, the United States Trustee sought

---

[1]Congress authorized the United States Attorney General to appoint 21 United States trustees, each to serve in a specific geographic region of the United States.  *See generally* 28 U.S.C. § 581 et. seq. (establishing the United States Trustee Program).  The United States trustees are senior officials of the Department of Justice.  *Id.*  The United States trustees "supervise the administration of cases and trustees" in all bankruptcy cases within his or her region through the exercise of a range of oversight responsibilities.  28 U.S.C. §586(a)(3).  *See generally*, *Morgenstern v. Revco, D.S., Inc.* (*In re Revco D.S. Inc.)*, 898 F. 2d 498, 500 (6th Cir. 1990)(explaining that United States trustees oversee the bankruptcy process, protect the public interest, and ensure that bankruptcy cases are conducted according to law.).  United States trustees may raise, appear, and be heard on any issue in any case or proceeding under Title 11.  11 U.S.C. § 307; *See also In re Revco, D.S, Inc.*, 898 F. 2d at 499-500 (upholding broad appellate standing of United States trustees).  Section 707(b) explicitly authorizes United States Trustees to move to dismiss debtors' chapter 7 bankruptcy cases.  In addition, when the United States Trustee determines that the presumption of abuse arises under the means test, section 704(b)(2) requires Unites States Trustees to either file a motion to dismiss under section 707(b) or file a statement setting forth the reasons the United States Trustee does not consider such a motion to be appropriate.

1

dismissal of these debtors' chapter 7 bankruptcy case based upon the United States Trustee's

conclusion these debtors failed that means test.  The court below denied the United States

Trustee's motion on alternative grounds.  First, it ruled the debtors' disposable income was less

than the United States Trustee suggested because they could deduct monthly payments on a loan

from a 401(k) retirement plan under section 707(b)(2)(A)(iii).  This additional expense allowed

them to pass the means test and obtain chapter 7 relief.  Alternatively, the court below ruled that

even if the debtors failed the means test, the debtors rebutted the presumption that their case

merited dismissal by adequately establishing special circumstances under 11 U.S.C. §

707(b)(2)(B).  Given those rulings the issues presented to this Court for determination on appeal

from the September 26, 2006, order denying the section 707(b) motion to dismiss are:

1.  Whether the court erred in ruling that the debtors' voluntary loan repayments to a retirement plan belonging to one of the debtors constituted an expense under 11 U.S.C. § 707(b)(2)(A)(iii) that reduced their net disposable income to enable them to pass section 707(b)'s means test?

2.  If the court erred in determining these debtors passed the means test, whether the court below also erred by alternatively holding these above median income debtors established special circumstances that allowed them to remain in chapter 7 despite failing the means test?

## STANDARD OF REVIEW

In an appeal taken from a bankruptcy court order, a district court reviews the bankruptcy

court's findings of fact under the clearly erroneous standard but reviews de novo the bankruptcy

court's conclusions of law.  *In re Isaacman*, 26 F3d. 629, 631(6th Cir. 1994) (citing *In re Zick*,

931 F.2d 1124, 1126 (6th Cir.1991)).  De novo review of legal questions requires this Court to

review questions of law independent of the bankruptcy court's determination of the law.  *In re*

*Schaffrath*, 214 B.R. 153, 154 (6th Cir. BAP 1997)(citations omitted).  The issue concerning

2

whether debtors are permitted under 11 U.S.C. § 707(b)(2)(A)(iii) to claim an expense for loan

repayments to a retirement plan is an issue of law and subject to de novo review.

The bankruptcy court's alternative ruling, that the debtors' 401(k) loan repayments are

"special circumstances" sufficient to rebut the presumption of abuse under 11 U.S.C. §

707(b)(2)(B), is a mixed question of law and application to fact.  The standard of review in that

instance is an abuse of discretion.  An abuse of discretion is defined as a

> definite and firm conviction that the [court below] committed a clear error of
> judgment.  The question is not how the reviewing court would have ruled, but rather
> whether a reasonable person could agree with the bankruptcy court's decision; if
> reasonable persons could differ as to the issue, then there is no abuse of discretion.

*In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 529 (6th Cir. 2002).  The bankruptcy court's

decision, under this standard, should be reversed if it "relied upon clearly erroneous findings of

fact, improperly applied the governing law, or used an erroneous legal standard."  *Gary's Elec.*

*Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003)(*citing Blue Cross & Blue Shield Mut. v. Blue Cross*

*& Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997).

## STATEMENT OF THE CASE

On January 5, 2006, Gregory B. Thompson and Patricia A. Thompson (the "debtors")

jointly filed for bankruptcy protection under chapter 7 of the Bankruptcy Code.  (Bankruptcy

Docket Entry Number 1, page 1, hereinafter "Dkt. __, p. __").  On February 17, 2006, the United

States Trustee filed a motion to dismiss their case under 11 U.S.C. § 707(b), asserting that it

would be an abuse of chapter 7 to grant the debtors a discharge.  (Dkt. 11).  The United States

Trustee's motion was based on the statutory presumption, codified under 11 U.S.C. § 707(b)(2),

that granting debtors a chapter 7 discharge constitutes an abuse of chapter 7 of the Bankruptcy

3

Code mandating dismissal whenever a debtor's current monthly income reduced by allowable expenses is at least $166.67 per month.  The United States Trustee argued that under the objective means test formula used to determine whether a chapter 7 case is presumptively abusive, these debtors could not deduct from their current monthly income, monthly payments to repay voluntary retirement plan loans.  *Id.*

On September 26, 2006, the bankruptcy court entered an order denying the United States Trustee's motion to dismiss the debtors' case as a presumed abuse of chapter 7, concluding that 11 U.S.C. § 707(b)(2)(A)(iii) authorized the debtors to claim as an expense their average monthly payments on account of a retirement plan loan.  (Dkt. 40-41).  Alternatively, the court concluded that even if that amount were not allowed under 11 U.S.C. § 707(b)(2)(A)(iii), the debt repayment constituted special circumstances to rebut the presumption of abuse.  *Id.*  The United States Trustee then timely filed this appeal.  (Dkt. 44).

## STATEMENT OF FACTS

1.  **Statutory Framework.**

    a.  **Overview of 11 U.S.C. § 707(b)(2)**

On October 17, 2005, most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 27 (April 20, 2005) (the "BAPCPA") took effect, implementing changes to the Bankruptcy Code.  In BAPCPA, Congress significantly amended section 707(b) of the Bankruptcy Code, which governs dismissal of chapter 7 bankruptcy cases.  As part of BAPCPA, Congress enacted section 707(b)(2) to curb bankruptcy abuse by, *inter alia*, preventing above median income debtors from obtaining chapter 7 relief, absent exceptional circumstances, when they can repay a statutorily determined amount of their

debt.  *See* 151 Cong. Rec. S1856(Mar. 1, 2005)(statement of Sen. Charles Grassley).  In such cases, BAPCPA gives the debtor the option to have his case dismissed or convert to chapter 13, where the debtor can obtain a discharge by using disposable income to repay creditors over a period of years.  Senator Grassley explained the purpose behind the BAPCPA amendments, "[i]t is this simple: if repayment is possible, then [a debtor] will be channeled into chapter 13 of the Bankruptcy Code which requires people to repay a portion of their debt . . ." *Id.*

As it existed prior to BAPCPA, section 707(b) of the Bankruptcy Code only authorized dismissal based on a finding that allowing the debtor relief constituted a "substantial abuse" of chapter 7.  Further, section 707(b) prior to its amendment by BAPCPA required courts to presume that a debtor was entitled to relief under chapter 7 of the Bankruptcy Code.  Section 707(b) now authorizes dismissal where the court finds that the granting of relief would be an "abuse" of chapter 7.  Moreover, BAPCPA repealed the former presumption in favor of granting a discharge to the debtor in section 707(b) and replaced it with a new presumption: it is now presumed that a case is an "abuse" of chapter 7 if a detailed mathematical formula set out in the statute (the "means test") yields an amount of monthly disposable income that is above a threshold amount specified in the statute.

The means test uses a series of calculations to determine whether the section 707(b)(2) presumption of abuse arises based on an above median income debtor's ability to pay.  *See* 11 U.S.C. § 707(b)(2)(A).  Specifically, the means test establishes a debtor's current monthly income ("CMI"), as defined in 11 U.S.C. § 101(10A), based on the debtor's income for the six calendar months preceding the bankruptcy filing.  If a debtor's annualized CMI falls below the applicable state median family income, a safe harbor applies, and the presumption of abuse will

5

not arise.[2]  If the debtor's CMI exceeds the applicable state median family income, the debtor

deducts certain standardized and actual expenses, as provided in section 707(b)(2)(A)(i) - (iv), to

calculate his or her monthly disposable income.

If an above median income debtor's monthly disposable income is less than $100 per

month (or $6,000 over 60 months), the presumption of abuse does not arise.  If the debtor's

monthly disposable income is equal to or exceeds $166.67 per month (or $10,000 over 60

months), the presumption of abuse arises.  If the above median income debtor's monthly

disposable income is between $100 and $167 per month, the presumption of abuse arises if that

amount, over 60 months, is sufficient to pay at least 25% of the debtor's nonpriority unsecured

debt.

Every debtor in a chapter 7 case who owes primarily consumer debts is required to file, in

conjunction with their bankruptcy schedules and statement of financial affairs, a Statement of

Current Monthly Income and Means Test Calculation, Official Form B22A (the "Means Test

Form").  11 U.S.C. §§ 521, 707(b)(2)(C); Interim Fed. R. Bankr. P. 1007(b)(4).[3]  In chapter 7

cases, the main purpose of the Means Test Form is to calculate monthly disposable income

(ability to pay) following the formula set forth in 11 U.S.C. § 707(b)(2), and determine whether

───────────────

[2]Under 11 U.S.C. § 707(b)(7), if the combined CMI of the debtor and the debtor's spouse
(whether or not the debtor files for bankruptcy with his/her spouse) is less than the applicable
state median family income for the debtor's household size, the safe harbor applies and the
presumption of abuse cannot arise.

[3]Pursuant to Second Amended General Order No. 2005-11, this Court has adopted in their
entirety the Interim Federal Rules of Bankruptcy Procedure ("Interim Bankruptcy Rules"), which
were approved by the Judicial Conference and issued by the Advisory Committee on Bankruptcy
Rules to implement the substantive and procedural changes mandated by BAPCPA.

the presumption of abuse arises.[4]

### b.    Rebutting the presumption of abuse: Special Circumstances

If the presumption of abuse arises under the means test, meaning that the debtors have

failed the means test, then the bankruptcy court must dismiss the case as an abuse of chapter 7,

unless the debtor rebuts the presumption.  However, the debtor may only rebut the presumption

of abuse by demonstrating and documenting "special circumstances" justifying an adjustment to

the debtor's CMI or expenses for which there is no reasonable alternative.  11 U.S.C. §

707(b)(2)(B).[5]  The Code specifically provides two examples of special circumstances, *i.e.*, a

---

[4]Debtors who file chapter 13 cases complete and file Official Form B22C, which is similar but not identical to Official Form B22A.  Official Form B22C is one tool utilized to determine the amount of monthly payments to be made by chapter 13 debtors into their repayment plans.

[5] Specifically, 11 U.S.C. §707(b)(2)(B) provides:
(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or call or order to active duty in the Armed Forces, to the extent that such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide

(I)  documentation for such expense or adjustment to income; and
(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (I) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii),

"serious medical condition" or "a call or order to active duty in the Armed Forces." 11 U.S.C. §

707(b)(2)(B)(i). Moreover, the special circumstances must support adjustments to income or

additional expenses that result in a monthly disposable income amount that is below the

threshold amount that triggered the presumption of abuse. 11 U.S.C. § 707(b)(2)(B)(iv).

In other words, after making the adjustments to income and expenses, the resulting

disposable income must be such that it: 1) is less than $166.67 per month, or 2) if between

$166.67 and $100, and when multiplied by 60, will not equal at least 25% of the debtor's

unsecured non-priority debt. *Id.* Also, there must not be any reasonable alternative for the

adjustment to income or increased expenses. *Id.*

## 2.    **Factual Background**

One of the debtors, Gregory Thompson, has been employed by Codonics, Inc.

("Codonics"), since August 1998, and voluntarily participates in Codonics' ERISA-qualified

401(k) plan, administered by Merrill Lynch. (Transcript of Hearing held on May 12, 2006, pages

8-9, hereinafter "Tr. p. __"). On or about May 22, 2004, Mr. Thompson borrowed $29,719 from

his 401(k) retirement plan account and accepted the terms and conditions of the loan. (Debtors'

Ex.[6] 1-1 to 1-13). Mr. Thompson agreed to repay the loan, plus interest, in no more than four and

a half years (54 months). (Debtors' Ex. 1-3). He also authorized Codonics to automatically

---

> (iii), and (iv) of [§707(b)(2)(A)] when multiplied by 60 to be less than the lesser
> of
> (I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000,
> whichever is greater; or
> (II) $10,000.

[6]As used herein, the terms "Debtors' Exs." and "UST's Exs." refer to exhibits that the
bankruptcy court received into evidence from the debtors and the United States Trustee at the
evidentiary hearing on the United States Trustee's motion to dismiss on May 12, 2006.

deduct loan payments in the amount of $283.90 per pay period (or $567.80 per month) from his bi-weekly salary and to deliver these payments to Merrill Lynch beginning in June 2004. (Debtors' Ex. 1-4).  Under the terms of the loan agreement, Mr. Thompson's last 401(k) loan repayment will be due in November, 2008.

To ensure repayment of the loan, Mr. Thompson granted the plan a lien against 50% of his vested account balance.  (Debtors' Ex. 1-10).  If Mr. Thompson defaults on the loan, the agreement provides that Merrill Lynch can accelerate Mr. Thompson's payment obligations and foreclose upon the plan's security interest in Mr. Thompson's vested account balance.  (Debtors' Ex. 1-13).  Nothing in the loan documents, however, permits either Merrill Lynch or the Codonics plan to pursue Mr. Thompson personally for any unpaid amounts.

On January 5, 2006, the debtors filed this bankruptcy case under chapter 7 of title 11, United States Code ("Bankruptcy Code").  (D.E. 1).  On their petition, they identified themselves as individuals with primarily consumer debts.  (UST Ex. 1-1).  The debtors also filed a Means Test Form, which claimed monthly disposable income of (-$241.93), and checked the box on the first page of the form indicating that the presumption of abuse did not arise.  (D.E. 1, pp. 38-43). On Line 26 of their Means Test Form, titled Other Necessary Expenses: Mandatory Payroll Deductions, debtors included a deduction of $615, which debtors asserted represented Mr. Thompson's monthly 401(k) loan repayment obligation. (*Id.*, p. 40).

On February 14, 2006, debtors filed an amended Schedule B (titled Personal Property) and amended Schedule D (titled Creditors Holding Secured Claims). (UST Ex. 2-1 to 2-5).  On Amended Schedule B, debtors added Mr. Thompson's interest in his 401(k) retirement account with Codonics, and indicated that the current value of the debtors' interest in the account was $0.

9

On Amended Schedule D, debtors added a purportedly secured claim owed to Merrill Lynch for a

401(k) loan in the amount of $21,032.27.  In the space provided in Schedule D to identify the

value of the property subject to the lien, debtors listed "$0."

On the same day they filed their amended schedules, debtors also filed an amended

Means Test Form.  (UST Ex. 3-1 to 3-6).  In their amended Means Test Form, debtors, *inter alia*,

deleted the $615 expense claim included on Line 26 of their original Means Test Form, and

added $350.54 to line 42(b), titled "Future payments on secured claims," which equaled the

balance owed on Mr. Thompson's 401(k) loan at that time, $21,032.27 divided by 60.  As

amended, debtors' Means Test Form concluded that the debtors had monthly disposable income

of $95.53, and that the presumption of abuse did not arise.

As required by section 704(b)(1), the United States Trustee reviewed all materials filed by

the debtors, and determined that the debtors' 401(k) loan repayment did not qualify as a secured

debt expense under the means test.  Accordingly, the United States Trustee recalculated the

debtors' monthly disposable income by eliminating the $350.54 secured debt deduction on Line

42 of the debtors' Means Test Form and calculated that the debtors had monthly disposable

income of $446.07 *(i.e.*, $350.54 plus the $95.53 in disposable income reflected on the debtors'

Means Test Form).  Since this amount exceeded $167, the United States Trustee concluded that

the presumption of abuse arose, and filed the statement required by section 704(b)(1) to that

effect.  (D.E.10).  Thereafter, on February 17, 2006, the United States Trustee filed a Motion to

Dismiss the debtors' bankruptcy case pursuant to section 707(b)(1), based on the presumption of

abuse under section 707(b)(2). (D.E. 11).

After an evidentiary hearing, the bankruptcy court held that payments on a loan secured

10

by a 401(k) account are payments on account of secured debt for purposes of 11 U.S.C. §

707(b)(2)(A)(iii). (D.E. 40, pp. 13-14). Accordingly, the bankruptcy court found that Mr.

Thompson's 401(k) loan repayments could be deducted from the debtors' CMI. *Id.* With this

deduction, the bankruptcy court concluded that the presumption of abuse did not arise. *Id.*

Alternatively, the court ruled that Mr. Thompson's retirement plan loan repayments constituted

special circumstances to rebut the presumption of abuse. (*Id.* at 17.) This appeal followed. (D.E.

44).

## SUMMARY OF ARGUMENT

Under the Bankruptcy Code, chapter 7 bankruptcy cases filed by debtors with above-

median income must be dismissed, absent non-volitional or non-voluntary special circumstances,

whenever they fail section 707(b)(2)'s means test. The means test uses a statutory formula to

determine whether a debtor's disposable income exceeds a specified amount. If so, a case must

be dismissed absent special circumstances unless the debtors choose to convert it to a chapter 13

repayment plan case.

In this case, the debtors would have failed the means test but for the fact that the

bankruptcy court permitted them to claim an improper expense, which allowed them to pass the

means test. That expense was the debtors' monthly repayments for a loan from Mr. Thompson's

retirement plan account, which the court below ruled was an allowable "secured debt" expense

under section 707(b)(2)(A)(iii). Allowing this expense was improper for at least three reasons.

First, retirement loans are not "debts" under section 101(12) of the Bankruptcy Code because the

retirement plans have no right of recourse against the debtor if the loan is not repaid. Second,

retirement loans are not secured obligations under section 506 of the Bankruptcy Code because a

11

debtor's interest in his retirement account is not property of the debtor's bankruptcy estate.
Third, allowing debtors to claim retirement loan repayments under the means test would
contravene the explicit and reasonable public policy objectives of the BAPCPA, which was
enacted to require above median income debtors to repay their debts when they can.

The bankruptcy court alternatively ruled that, even presuming the debtors failed the
means test, the debtors established special circumstances under section 707(b)(2)(B), which
precluded dismissal.  That ruling constituted error for three separate and independent reasons.
**First**, under the doctrine of *ejusdem generis*, Mr. Thompson's loan repayments are not special
circumstances as a matter of law because they are not similar to the two special circumstances
identified in section 707(b)(2)(B), *i.e.*, a serious medical condition or a call or order to active
duty in the Armed Forces.  **Second**, the special circumstances provisions only apply if debtors
can establish that they have "no reasonable alternative" to incurring the expense at issue.  Here,
the debtors have two reasonable alternatives.  As an initial matter, they could obtain a court order
directing Mr. Thompson's 401(k) plan administrator to repay the loan out of the balance of the
funds in his retirement account.  Alternatively, they could voluntarily convert their case to
chapter 13, something that will enable them to repay the 401(k) loan while simultaneously
repaying their creditors.  A chapter 13 case would produce a meaningful recovery for creditors.
Once Mr. Thompson's 401(k) loans are repaid in November 2008, the debtors can then commit
the $567.80 to repaying their unsecured creditors.  In chapter 13, the debtors could have
confirmed a sixty-month repayment plan that over the life of the plan would have paid unsecured
creditors more than $21,000.  Thus, these debtors have available to them the reasonable
alternative of converting their case to chapter 13 and confirming a repayment plan.  **Third**,

12

adjustments to expenses under the special circumstances provision is limited to categories of expenses allowed under section 707(b)(2)'s means test. Because 401(k) loan repayments are not a category of allowed expenses under the means test, they cannot qualify as "additional expenses" under section 707(b)(2)(B).

## ARGUMENT

I.    **The court below erred by denying the United States Trustee's motion to dismiss on the ground that section 707(b)(2)(A)(iii) permits debtors to deduct retirement account loan repayments as secured debts in determining ability to repay because such loan repayments are not "debts" or "secured" obligations within the meaning of the Bankruptcy Code.**

In this case, the debtors would have failed the means test under section 707(b)(2) but for the fact that the court below allowed the debtors to deduct an improper expense. Specifically, the bankruptcy court allowed as a payment on account of secured debts under section 707(b)(2)(A)(iii), Mr. Thompson's monthly repayments for amounts borrowed from his 401(k) retirement plan account prior to debtors' bankruptcy filing. If this improper expense is disallowed, these debtors fail the means test and their case must be dismissed unless they choose to convert it to chapter 13.

A.    **The court below erred in finding Mr. Thompson's loan repayments to be "secured debts" under section 707(b)(2)(A)(iii), but to be such it had to be (1) a "debt" and (2) "secured" under the Bankruptcy Code.**

When calculating disposable income under the means test, section 707(b)(2)(A)(i) permits debtors to deduct expenses defined in section 707(b)(2)(A)(ii), (iii), and (iv) from their CMI. Section 707(b)(2)(A)(iii) allows debtors to deduct from CMI certain payments on secured debts. Specifically, section 707(b)(2)(A)(iii) permits a reduction of CMI for secured debts as

13

follows:

> [t]he debtor's average monthly payments on account of secured debts shall be calculated as the sum of
>
> (I)    the total of all amounts scheduled as contractually due to *secured creditors* in each month of the 60 months following the date of the petition; and
>
> (II)    any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts.

(emphasis supplied).  Thus, the plain language of section 707(b)(2)(A)(iii) only allows a deduction for payments on account of "debts" that are "secured," calculated with reference to amounts due to "secured" creditors.  When the language of a statute is plain, as it is here, "the sole function of the courts – at least where the disposition required by the text is not absurd  – is to enforce it according to its terms."  *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *see also In re Hardacre*, 338 B.R. 718 (Bankr.N.D. Tex. 2006)(citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989)(plain language of the statute controls, unless a literal reading of the statute is contrary to the intention of the drafters).

**B.**    **Because it was not a "debt" under the Bankruptcy Code, the court below erred in ruling that Mr. Thompson's loan repayment was an allowable "secured debt" expense under section 707(b)(2)(A)(iii).**

Under bankruptcy law, Mr. Thompson's obligation to repay a loan to his 401(k) retirement plan constitutes neither a "debt" nor a "secured debt," and no payment on this obligation is due to a "secured creditor."[7]

---

[7]The United States Trustee acknowledges that outside of bankruptcy, Mr. Thompson's obligation to repay his 401(k) retirement plan loan constitutes a debt, that ERISA law only permits loans that are "adequately secured" (*See* 29 U.S.C. §§ 1106 & 1108) and that Mr. Thompson granted a "lien" against the balance of his retirement account.  However, the

14

The bankruptcy court correctly noted that section 101(12) of the Bankruptcy Code defines the term "debt," but then failed to apply the Bankruptcy Code's definition or case law applying such definition in considering whether the debtor's loan actually constituted a debt in that case. As defined by the Bankruptcy Code, the term "debt" means "liability on a claim." 11 U.S.C. § 101(12). In turn, the Bankruptcy Code defines the term "claim" broadly, to mean

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The definitions of "claim" and "debt" are "coextensive." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 522, 558 (1990); *Johnson v. Home State Bank*, 501 U.S. 78, 84-85, n.5 (1991); S. Rep. No. 989, 95th Cong. 2d Sess. 23 (1978) reprinted in 1978 U.S. Code Cong. & Admin. News, pp. 5787, 5809 ("The terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor").

In a variety of contexts, courts have consistently ruled that a debtor's obligation to repay a loan from his or her retirement account, whatever its nature outside of bankruptcy, is not a "debt" under the Bankruptcy Code. As one bankruptcy court noted, "[t]here is a clear consensus that an

---

Bankruptcy Code defines debts and secured obligations more narrowly than nonbankruptcy law. Accordingly, the fact that an obligation is treated as a secured debt under applicable nonbankruptcy law does not determine whether the obligation is secured for purposes of the Bankruptcy Code. *See*, *In re Prosper*, 168 B.R. 274, 277 (Bankr.D Conn. 1994)(following the approach under the Bankruptcy Code for the determination fo secured debts and rejecting a literal approach based on nonbankruptcy law).

individual's pre-petition borrowing from his retirement account does not give rise to a secured or unsecured 'claim,' or a 'debt' under the Bankruptcy Code." *In re Esquivel*, 239 B.R. 146, 151 (Bankr. E.D. Mich. 1999).  This "clear consensus" is based, in part, on the fact that employer retirement plans generally lack the power to commence collection actions against the debtor, and hence have no enforceable "right to payment" against the debtor, as required by 11 U.S.C. § 101(5).

For example, in *In re Villarie*, 648 F.2d 810 (2d Cir. 1981), the debtor borrowed money from his account with the state retirement system and listed the retirement system as a "secured creditor."  After the debtor filed for bankruptcy, the retirement system sought declaratory relief that the loan was not a "debt" within the meaning of the Bankruptcy Code.  The Second Circuit analogized the transaction to "an annuitant's withdrawal from the savings account of his annuity fund . . .an insured's advance from the reserve fund of his insurance policy," and held that it did not create a debtor-creditor relationship that gave rise to a claim under the Bankruptcy Code because the retirement system had no right to sue the debtor if he failed to repay the loan. *Id.* at 812.

A number of bankruptcy courts have followed *Villarie* and have concluded that retirement loan repayments are not debts within the meaning of the Bankruptcy Code. *See, e.g.,* *In re Cohen*, 246 B.R. 658, 667 (Bankr. D. Colo. 2000)(also noting that a retirement loan is in essence a debt to oneself); *In re Fulton*, 211 B.R. 247, 264 (Bankr. S.D. Ohio 1997) (funds borrowed form debtor's own pension accounts did not constitute debts under the Bankruptcy Code because the retirement plans did not possess a claim against the debtors); *In re Esquivel*, *supra*, 239 B.R. at 149-152; *In re Scott*, 142 B.R. 126, 127-31 (Bankr. E.D. Va. 1992)(retirement

16

loan "created no right to repayment that the ERISA plan can assert against the debtor."); *In re Jones*, 138 B.R. 536, 537-38 (Bankr. S.D. Ohio 1991)("[A]ny amounts not repaid to the [retirement account] are merely offset from the Debtor's future benefits . . . Thus, the [plan administrator] has no right to repayment, and the loan does not constitute a 'claim' under 11 U.S.C. § [101(5)] nor a 'debt' under 11 U.S.C. § [101(12)]").

In a related context, the Sixth Circuit followed *In re Villarie*. In *Mullen v. United States (In re Mullen)*, 696 F.2d 470 (6th Cir. 1983), the debtor had received a "readjustment allowance" from his employer, the U.S. Air Force, pursuant to 10 U.S.C. § 687, when he was released following a force reduction. The statute provided, *inter alia*, that if the debtor returned to the military, he would not receive any retirement pay until he repaid 75% of the readjustment allowance. The debtor later returned to the military and retire after completing the necessary term of service, but without repaying the readjustment balance. Shortly after he left military service, the debtor filed a chapter 7 bankruptcy petition, and then filed a motion to hold the U.S. Air Force in contempt for violating the automatic stay[8] against collection efforts by continuing to withhold his retirement benefits.

The Sixth Circuit rejected the debtor's argument, relying on *In re Villarie*, and the legislative history of 11 U.S.C. § 101, which noted that

> [t]he definition of "debt" and the definition of "claim" on which it is based, proposed 11 U.S.C. § 101(4), will not include a transaction such as a policy loan on an insurance policy. Under that kind of transaction, the debtor is not liable to the insurance company for repayment; the amount owed is merely available to the company for setoff against any benefits that become payable under the policy. As such, the loan will not be a claim (it is not a right to payment) that the company can assert against the estate; nor will the

---

[8]The "automatic stay," codified in 11 U.S.C. § 362, automatically and broadly enjoins any creditor collection actions upon a debtor's bankruptcy filing.

debtor's obligation be a debt (a liability on a claim) that will be discharged under proposed 11 U.S.C. § 523 or 524.

*In re Mullen*, 696 F.2d at 472 *quoting* H.R. No. 595, 95th Cong., 2d Sess. 310, *reprinted in* 1978

U.S. Code Cong. & Ad. News 5787, 6267.  The Sixth Circuit further found

> the transaction between the [U.S. Air Force] and [the debtor] to be analogous to a loan on an insurance policy.  The Air Force's readjustment allowance appears to be nothing more than a type of prepaid retirement benefit.  Like the terms of a loan on an insurance policy, the [Air Force] has the right to setoff benefits that have already been paid against benefits that become payable.  No interest accrued on the amount owed nor did the [Air Force] have the right to recoup the readjustment allowance from any other source.  This is the precise transaction contemplated by the history of subsection [101(12)].

*Id.*

Like the Air Force in *Mullen*, Mr. Thompson's retirement plan administrator has no right to recover any unpaid portion of the 401(k) loan from any source other than Mr. Thompson's vested retirement account balance, which is akin to the "prepaid retirement benefit" at issue in that case.  Accordingly, Mr. Thompson's obligation to repay his retirement loan does not constitute a "claim" or a "debt" under the Bankruptcy Code, and the court below erred by allowing the debtors to deduct Mr. Thompson's monthly payments on the loan from their current monthly income under section 707(b)(2)(A)(iii).

**C.     Alternatively, because Mr. Thompson's retirement loan obligations are not "secured" within the meaning of the Bankruptcy Code, the court below erred in ruling that the obligations were "secured debts" due to a "secured creditor" within the meaning of 11 U.S.C. § 707(b)(2)(A)(iii).**

Mr. Thompson's retirement loan obligation is not a debt under the Bankruptcy Code.  Further, the bankruptcy court's ruling should be reversed because this retirement loan obligation is not a "secured" debt that is eligible to be treated as an allowed expense under section 707(b)(2)(A)(iii).  The bankruptcy court found that the Code "define[d]" the phrase "secured

18

claim" under 11 U.S.C. § 506(a)(1), but declined to apply this definition to the term "secured debts" in section 707(b)(2)(A)(iii) because it "incorporates several concepts such as allowance of claims, property of the estate, as well as the state-law concept of the lien." *Thompson*, 350 B.R. at 774. Accordingly, the bankruptcy court went outside the Bankruptcy Code and applied a dictionary definition of "secured debt" and ERISA law to conclude that Mr. Thompson's retirement plan loan repayments qualified as a secured debt under the Bankruptcy Code. *Id.*

The bankruptcy court also erred by looking outside the Bankruptcy Code to define "secured debt" under section 707(b)(2)(A)(iii) and also applied an improperly broad definition of "secured debts." According to the bankruptcy court, the phrase "secured debts" encompasses any "debt backed by collateral." *Id.* Had Congress intended such a broad definition, however, it could easily have substituted the word "lien" for the phrase "secured debts" in section 707(b)(2)(A)(iii). Section 101(37) defines "lien" to mean a "charge against or interest in property to secure repayment." Instead, Congress used the word "secured" to modify the term "debt," which conveys a much more specific bankruptcy concept than that of a simple "lien."

Section 506(a), titled "Determination of secured status" has been part of the Bankruptcy Code since its enactment in 1978 and applies to all chapter 7 bankruptcy cases.[9] 11 U.S.C. § 506(a) provides a general framework, for bankruptcy purposes, to assess whether and to what extent a creditor's claim is secured. Where, as in section 707(b)(2)(A)(iii), Congress uses a term that is also found in a closely related statute, and where the term has long been given a consistent

_____

[9]*See* 11 U.S.C. § 103(a), which provides: "Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 1, 12, or 13 of this title, and this chapter, sections 307, 362(n), 555 through 557, and 559 through 562 apply in a case under chapter 15." Chapter 5 of the Bankruptcy Code includes section 506.

19

meaning in that statute, Congress is presumed to have intended to give the term the same meaning in the new statute, absent affirmative indication to the contrary. *See, e.g., Salinas v. United States*, 522 U.S. 52, 63 (1997)("When Congress uses well-settled terminology . . . its words are presumed to have their ordinary meaning and definition."); *Morrisette v. United States*, 342 U.S. 246, 263 (1952)(same); *Standard Oil Co. v. United States,* 221 U.S. 1, 59 (1911)(same).

In addition, the Supreme Court has noted the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) *quoting Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (1986); *see also In re Pensignorkay, Inc.*, 204 B.R. 676, 683 (Bankr. E.D. Pa. 1997)("Although the term 'secured debts' as used in Code § 101(51B) is not expressly defined by the Code, well established principles of statutory construction provide that its meaning may be divined be reference to other provisions of the statute."). Consistent with this approach, courts have also looked to section 506 when defining the phrase "secured debts" in section 109(e) of the Bankruptcy Code, which governs eligibility for chapter 13 bankruptcy relief. *See e.g., In re Miller*, 907 F.2d 80, 82 (8th Cir. 1990)(holding "that the test of 11 U.S.C. § 506(a) should be used to determined the character of debts for purposes of 11 U.S.C. § 109(e).").

Section 506(a)(1) provides, in relevant part, that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . .is a secured claim to the extent of the value of such creditor's interest in such property." In other words, a secured claim under the Bankruptcy Code refers to a claim secured by a lien on property in which the debtor's *bankruptcy estate* owns an interest. In turn, for the debtor's bankruptcy estate to own an interest in property, it necessarily must first be property of a debtor's bankruptcy estate.

20

Here, Mr. Thompson's interest in his 401(k) retirement plan is not property of the debtors' bankruptcy estate for two reasons. First, section 541 of the Bankruptcy Code, titled "[p]roperty of the estate" defines what property is included and excluded from a debtor's bankruptcy estate under section 541(c)(2), and "any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law" is excluded from property of the estate. *Patterson v. Shumate*, 504 U.S. 753, 758-760 (1992). The quoted text encompasses the transfer restrictions contained in ERISA law, which governs Mr. Thompson's 401(k) retirement plan in this case. Accordingly, Mr. Thompson's interest in his retirement account is not property of the debtors' bankruptcy estate. *Id.* Second, section 541(b)(7) broadly excludes from "property of the estate" "any amount (A) withheld by an employer from the wages of employees for payment as contributions (i) to – (I) an employee benefit plan that is subject to . . .[ERISA] . . ." or "(B) received by an employer from employees for payment as contributions to . . .an employee benefit plan that is subject to [ERISA] . . ." Under this section, any of Mr. Thompson's contributions to his 401(k) account are not property of the debtors' bankruptcy estate.

Because the debtors' interest in Mr. Thompson's retirement plan is not part of the debtors' bankruptcy estate, the retirement plan loans cannot be a secured claim or, *a fortiori*, a "secured debt" under section 506(a). *In re Pensignorkay, Inc.*, *supra*, 204 B.R. at 683 (noting that because "a debt and claim are essentially 'flip sides of the same coin,' the terms 'secured debt' and 'secured claim' . . .are similarly related"); *see also In re Fulton*, 211 B.R. at 263-64 (noting that no case law existed in support of debtors' proposition that their retirement loans were "secured debts" and that the Bankruptcy Code did not transform "this type of transaction –

21

a loan from the debtor's pension fund – into a secured debt giving rise to a right to payment

under § 101(5)."). Accordingly, Mr. Thompson's repayment obligation on his 401(k) loan is

neither a debt nor a secured debt under the Bankruptcy Code, and the bankruptcy court erred by

holding to the contrary.

**D.  Requiring the debtors to commit to a repayment plan under chapter 13 best comports with the explicit and reasonable public policy objectives of Congress by allowing the debtors to repay Mr. Thompson's 401(k) loan while also allowing a substantial repayment to creditors.**

The United States Trustee's position not only implements the plain meaning of the

statute, it also is fairest to both debtors and creditors and comports with Congress' goals in

implementing bankruptcy reform.  A "primary goal" of BAPCPA was to "ensure that debtors

repay creditors the maximum they can afford."  *In re Lenton*, – B.R. –, 2006 WL 3850011 at *6

(Bankr. E.D. Pa. 2006) *citing* H.R. Rep. No. 109-31, pt. 1, at 1 (2005), *as reprinted in* 2005

U.S.C.C.A.N. 88, 89.  As the bankruptcy court noted, Congress also expressed an intent to

protect retirement contributions in bankruptcy by, *inter alia*, excluding them from a debtor's

disposable income calculations in a chapter 13 case.  Excluding deductions for  retirement loan

repayments from the means test in a chapter 7 case, however, is consistent with both of these

goals and is also fair to debtors and creditors.

In most chapter 7 cases, debtors receive a discharge relatively quickly, typically sixty days

after the date first set for the meeting of creditors.  *See* Fed. R. Bankr. P. 4004(a), (c).  A

discharge releases a debtor from personal liability for most debts and enjoins creditors from

attempting to collect the debt.  11 U.S.C. § 524.  In contrast, a chapter 13 case is "prospective,

*i.e.*, it encompasses a debtor's current and future financial circumstances for a period of three to

22

five years" before the debtor receives a broader discharge than the discharge granted in chapter 7.

*In re Lenton*, 2006 WL 3850011, at *6.

> Section 1322(a) requires that a Chapter 13 plan 'provide for the submission of all or such portion of *future* earnings or other *future* income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan.' *Id.* (emphasis added). Section 1325(b)(1)(B) requires debtors to use all of their '*projected* disposable income' over a commitment period of three to five years. [citation omitted]. Further, § 521(f) requires a debtor, upon request, to file tax returns and updated statements of income and expenses during the pendency of the case.

*Id.* (emphasis in original).

As a general rule, the Internal Revenue Code provides that a 401(k) loan is a taxable distribution to the borrower, unless, *inter alia*, the loan by its terms is to be repaid within five years. 26 U.S.C. § 72(p)(1), (p)(2)(A)("exception for certain loans"); *Patrick v. Commissioner, T.C.* Memo 1998-30 at *3, *aff'd* 181 F.3d 103 (6th Cir. 1999). Thus, to ensure that retirement loans fit within the IRS's exception, employers generally limit loan terms to no more than five years. Accordingly, most above median income chapter 13 debtors who borrow from their 401(k) plan account will pay off their loans within the five year "applicable commitment period" set forth in section 1325(b)(4).

> Excluding 401(k) loans from the means test evidences a 'wait and see' approach that would channel debtors with such expenses into the longer period of bankruptcy supervision of Chapter 13 rather than the relatively short tenure of a Chapter 7 case, notwithstanding that doing so might result in a zero payment plan [under chapter 13].

*In re Lenton, supra*, 2006 WL 3850011 at *6. If, however, the debtors repay the loan within the applicable commitment period of their chapter 13 case, the trustee may seek to modify the plan to increase the monthly plan payment to repay creditors. 11 U.S.C. § 1329. "Such an approach serves both the Congressional intent to protect retirement contributions and 'ensure that debtors

23

repay creditors the maximum they can afford,' a primary goal of BAPCPA." *Id.*

The facts of this case demonstrate the logic of the approach

articulated by *In re Lenton*. Under it, Mr. Thompson would be able to repay his loan, while at

the same time, unsecured creditors could recover more than $21,000 of their debts. Specifically,

Mr. Thompson's 401(k) loan, by its terms, will be repaid no later than November 2008, which is

less than three years after debtors' bankruptcy filing in January 2006 and only two years and three

months after the date of the bankruptcy court's order overruling the United States Trustee's

motion to dismiss. Because the debtors' annualized current monthly income exceeds the

applicable median family income for the debtor's household size in Ohio, section

1325(b)(4)(A)(ii) would require the debtors, under chapter 13, to propose a five year repayment

plan.

Initially, section 1322(f) would exclude Mr. Thompson's 401(k) loan repayments from

debtors' disposable income calculations, and the debtors would therefore not have to contribute

these funds to a repayment plan. However, once Mr. Thompson repays the loan in November

2008, creditors or the chapter 13 trustee could move to modify the plan to increase the debtors'

plan payments by $567.80. Over the remaining term of the plan, that could result in substantial

repayments to unsecured creditors.[10] Thus, excluding a debtor's 401(k) loan repayments from the

means test in order to "wait and see" if the debtors' circumstances permit repayment in a chapter

---

[10]For example, if the debtors confirmed a five year (60 month) chapter 13 plan in the
month they filed their chapter 7 case, January 2006, and Mr. Thompson finished repaying his
401(k) loan in November 2008 (*i.e.*, 23 months later), the debtors could contribute at least
$21,008.60 over the remaining 37 months of the plan (*i.e.* $567.80 x 37 = $21,008.60), which
represents approximately 45% of the debtors' scheduled unsecured debt ($46,059.60). If this
Court reverses and remands now, and the debtors' confirmed a chapter 13 plan, there would be
an even greater recovery for creditors.

13 comports with Congress' stated intent to channel debtors into chapter 13 plans where repayment is possible.

## II.  The bankruptcy court abused its discretion by holding that Mr. Thompson's 401(k) plan loan repayments constituted "special circumstances" sufficient to rebut the presumption of abuse under section 707(b)(2).

Alternatively, the bankruptcy court held that if a "reviewing Court" determined that Mr. Thompson's 401(k) loan repayments do not qualify under § 707(b)(2)(A)(iii), "the debtors have successfully rebutted the presumption [of abuse] by demonstrating 'special circumstances' under § 707(b)(2)(B)." (R.40, p. 17).

Section 707(b)(2)(B)(i) sets forth the requirements for establishing special circumstances sufficient to rebut the presumption of abuse.  Specifically, that section provides:

> In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances . . . justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

Because retirement plan loan repayments are not similar in nature to a "serious medical condition" or "a call or order to active duty in the Armed Forces," because the debtors had reasonable alternatives to continuing to incur the expense, and because 401(k) loan repayments are not an allowed expense deduction under the means test, the bankruptcy court abused its discretion in finding that the debtors established special circumstances to rebut the presumption or abuse.

### A.  Under doctrine of *ejusdem generis*, only circumstances similar in nature to the categories of special circumstances identified in section 707(b)(2)(B) qualify as "special circumstances."

Congress did not provide an exhaustive list of "special circumstances" but, rather,

25

specifically stated that the statutory presumption of abuse may only be rebutted by "special circumstances *such as* a serious medical condition or a call or order to active duty in the Armed Forces." *Id.* (emphasis added).[11]  The canon of *ejusdem generis* addresses interpretation of statutes where a general provision is accompanied by specific examples.  "[W]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Woods v. Simpson*, 46 F.3d 21, 23 (6th Cir. 1995) *quoting from 2A Norman J. Singer, Sutherland Statutes and Statutory Construction* § 47.17, at 188 (5th ed. 1992).  Accordingly, only circumstances that are similar in nature to a "serious medical condition" or "a call or order to active duty in the Armed Forces" are sufficient to rebut the statutory presumption of abuse.  *In re Hanks*, -- B.R. --, 2007 WL 60812 (Bankr. D. Utah Jan. 9, 2007)(applying the doctrine of *ejusdem generis* to hold that a post-bankruptcy reduction in income following a job change did not qualify as a special circumstance within the meaning of section 707(b)(2)(B)).

Within the Sixth Circuit, at least one bankruptcy court has interpreted the phrase "special circumstances" using *ejusdem generis*.  In *In re Castle*, Case No. 06-30266 (RLS) (Bankr. N.D. Ohio Sept. 11, 2006)(Exhibit A), the court ruled that under the doctrine of *ejusdem generis*, courts must limit "the sphere of permissible special circumstances" to situations bearing "similar traits and characteristics" to the examples listed in § 707(b)(2).  *Id.* slip. op. at 8.  The court

---

[11] Typically, when Congress wants to provide a non-exhaustive list that contains unrelated bases for taking an action, it uses the word "includes" or "including" which are defined terms in section 102(3) of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 1112(b)(4)(chapter 11 conversion or dismissal); 11 U.S.C. § 1208(c)(chapter 12 conversion or dismissal); 11 U.S.C. § 1307(c)(chapter 13 conversion or dismissal); 11 U.S.C. § 1104(a)(1)(appointment of a chapter 11 trustee for cause).

further found that both a "serious medical condition" and "a call to active duty share" "a commonality [as] they both constitute situations which not only put a strain on a debtor's household budget, but they arise from circumstances normally beyond the debtor's control." *Id.*

The debtors did not allege a serious medical condition, a call or order to active duty, or similar circumstances. Instead, Mr. Thompson simply testified that he had been unable to stop his employer from automatically deducting 401(k) loan repayments from his paycheck, and that absent a court order or quitting his job he could not stop the automatic deductions. This is not the kind of extraordinary, non-routine expense that Congress identified as "special circumstances." *See In re Johns*, 342 B.R. 626, 629 (Bankr.E.D.Okla. 2006)(rejecting debtors' argument that their need to repay 401(k) loans and continue to make 401(k) contributions qualified as "special circumstances," noting specifically that "the circumstances in the present case do not rise to the same level as a serious medical condition or a call to active duty.")

### B. The debtors had reasonable alternatives to repaying Mr. Thompson's 401(k) loan.

In addition to demonstrating "special circumstances," section 707(b)(2)(B)(i) requires that such circumstances be those "for which there is no reasonable alternative." The bankruptcy court found the debtors' only alternative to continuing to make the payments via automatic payroll deductions was for Mr. Thompson to "quit his job ... [which] would have been financially irresponsible..." or for the Debtors to repay the loan in full, which would have been "financially impossible." (R. 40, p. 16). To the contrary, the debtors had at least two other reasonable alternatives.

First, Mr. Thompson could obtain a court order directing the administrator of his 401(k)

27

plan, Merrill Lynch, to repay the loan out of the balance of the funds in his retirement account. Mr. Thompson alluded to the possibility of obtaining a court order during his testimony at the evidentiary hearing on the United States Trustee's motion to dismiss.  Tr. p. 54, lines 19-20.  *See In re Tranmer*, 2006 WL 3366458 at *15 (Bankr. D. Mont. Nov. 16, 2006)(special circumstances under section 707(b)(2)(B) "contemplates circumstances beyond a debtor's reasonable control. . ."). The debtors failed to establish that it was beyond their control to obtain such an order.

Second, the debtors could pay a court fee and convert their case to chapter 13 and confirm a repayment plan under that chapter.  Under chapter 13, 401(k) loan repayments are excluded form a debtor's disposable income calculations. 11 U.S.C. § 1322(f).  However, as discussed above, Mr. Thompson's 401(k) loan will be fully repaid by November 2008, after which debtors could contribute Mr. Thompson's loan repayments to repay approximately $21,000 of the debtors' unsecured debt. *See In re Sparks*, Case No. 06-10112, slip op. at 9 (Bankr.E.D.Tex. Oct. 18, 2006)(noting that the special circumstances exception is not available to justify the approval of expenses incurred merely at a debtor's discretion, the impact of which can be minimized, if not eliminated, through careful consideration of the remedies available to debtors under the Bankruptcy Code.)(Exhibit A).

### C.    Adjustments to expenses under section 707(b)(2)(B) is limited to categories of expenses allowed under section 707(b)(2)'s means test.

Finally, section 707(b)(2)(B)(i) requires debtors to establish special circumstances that "justify additional expenses or adjustments of current monthly income. . ."  The universe of allowable expense categories under the means test is set forth in section 707(b)(2)(A) and on the Means Test Form.  The special circumstances test should not be interpreted as opening the door

28

for a debtor to claim any expenses that he may conceivably incur. *See In re Jass*, 340 B.R. 411, 418 (Bankr. D.Utah 2006)(limiting adjustments to expenses to those reflected in the applicable official form used to calculate the means test). To the contrary, the types and categories of "additional" expenses intended to be allowed for special circumstances are limited to those specified in section 707(b)(2)(A). This interpretation of the term "additional" in section 707(b)(2)(B) is evidenced by a committee report to the bankruptcy reform legislation proposed in 2000, which legislation was nearly identical in form and scope to the BAPCPA. In the committee report, Congress noted that it was

> "not intended that *additional* expenses will be deductible *except as otherwise specified in section 707(b)*. For example, an additional allowance is available if demonstrated to be reasonable and necessary up to 5% of the monthly allowance for food and clothing categories as specified by the National Standards."

146 Cong. Rec. S11683, S11702 (Dec. 7, 2000) 2000 WL 1796598 at *S11702 (emphasis added). Thus, "additional expenses" that may be sufficient to rebut the presumption must therefore include amounts that exceed the otherwise allowable expense amounts listed on a debtor's Means Test Form. Because 401(k) loan repayments are not a category of allowed expense under the means test, they cannot qualify as "additional expenses" under section 707(b)(2)(B).

## CONCLUSION

For these reasons, the United States Trustee respectfully asks this Court to reverse the order entered below denying the United States Trustee's motion to dismiss, and remand with instructions that the bankruptcy court correctly apply the statutory provisions of 11 U.S.C. § 707(b)(2).

Dated: January 26, 2007          Respectfully submitted,


         /s/Dean Wyman
         Dean Wyman, Esq.
         Senior Trial Attorney
         Department of Justice
         #0007848
         Office of the United States Trustee,
         Suite 441, H.M. Metzenbaum U.S. Courthouse
         201 Superior Avenue
         Cleveland, Ohio 44114
         Dean.P.Wyman@usdoj.gov


         Attorney for U.S. Trustee Saul Eisen

         **Of Counsel**

         P. Matthew Sutko
         David A. Levine
         Executive Office for United States Trustees
         Department of Justice
         20 Massachusetts Avenue, N.W.
         Suite 8000
         Washington, D.C. 20530
         (202) 307-1399

<u>Certificate of Service</u>

I certify that on January 26, 2007, a copy of the foregoing "Brief of The Appellant Saul Eisen United States Trustee" was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

<u>/s/Dean Wyman</u>
Dean P. Wyman

31

**EXHIBIT A**

UNREPORTED OPINIONS

*Pursuant to Sixth Circuit Rule 28(g)*

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
 )  **JUDGE RICHARD L. SPEER**
In re Larry and Tracy Castle )
 )  Case No. 06-30266
Debtor(s) )
 )

## DECISION AND ORDER

This cause is before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Debtors' Case Pursuant to 11 U.S.C. § 707(b). The Debtors, Larry and Tracy Castle, filed a Response in Opposition to the Trustee's Motion. At the conclusion of the Hearing, the Court took the matter under advisement, the issue raised being one of first impression, so as to afford a thorough opportunity to consider the merits of the Parties' respective positions. The Court has now had this opportunity, and finds, for those reason explained herein, that the Motion of the United States Trustee should be Granted.

## DISCUSSION

In its Motion, the United States Trustee (hereinafter "UST"), seeks the dismissal of the Debtors' Chapter 7 bankruptcy case under 11 U.S.C. § 707(b)(1). As a determination of dismissal under this section directly involves the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, this matter is a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(J)'(O); 1334.

**In re Larry and Tracy Castle**
**Case No. 06-30266**

On October 17, 2005, most of the provisions under what is known as BAPCPA[1] came into effect. This Act, the better part of a decade in the making, was passed in response to perceived abuses within the bankruptcy process. A prime concern: debtors who otherwise had the ability to repay their debts were using the bankruptcy process to escape liability, thereby raising the cost of credit for all Americans, especially those with the least ability to afford it. With respect to this concern, a key component of BAPCPA is revised § 707(b).

Section 707(b) was first enacted in 1984 to provide a mechanism by which debtors who sought to abuse the bankruptcy process could be denied its protection. But out of concern for creditor overreach, and so as to strike a proper balance between the competing interests of the debtor and the creditor, § 707(b) limited its breadth in a number of ways. *See In re Green*, 934 F.2d 568, 570 (4th Cir.1991). Among these, § 707(b) provided that a debtor's bankruptcy case could be dismissed for "abuse," but only if the abuse was "substantial."

The newly enacted BAPCPA, however, apparently in recognition that any 'abuse' of the bankruptcy process was improper, eliminated the adjective "substantial," thereby lowering the threshold for dismissal. Another key component: section 707(b) now provides that, under certain conditions, the filing of a case by a debtor under Chapter 7 will be presumed to be an abuse. It is this presumption of abuse which is at the center of the Parties' controversy.

Section 707(b)(2)(A)(i), the relevant provision, sets forth the initial conditions under which the presumption of abuse will arise. It provides, *inter alia*, that:

> In considering . . . whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's

---

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

Page 2

**In re Larry and Tracy Castle**
**Case No. 06-30266**

current monthly income reduced by the amounts determined under clauses
(ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of–

(I) 25 percent of the debtor's nonpriority unsecured claims in the case,
or $6,000, whichever is greater; or

(II) $10,000.

Restated, a Chapter 7 filing will be presumed to be abusive if, after deducting for certain allowable
expenses as permitted in subclauses (ii), (iii), and (iv), the debtor's remaining income, as calculated
over a five-year period, satisfies one of these two conditions: (1) it is greater than $10,000.00, or
$166.66 per month; or (2) although less than $10,000.00, it is greater that $6,000.00, – that is, greater
than $100.00 per month – and that amount will pay more than 25% of the debtor's unsecured debt.
This calculation, however, which has become to be known as the 'means test,' does not apply to all
debtors, with § 707(b) containing a 'safe harbor' provision: debtors are not to be evaluated under the
'means test' if their current monthly income is below the median income for a household of the same
size in that state. 11 U.S.C. § 707(b)(7).

In this matter, the Debtors concede that the 'means test' is applicable, and that through the
application of the test, a presumption of abuse arises. Specifically, applying the 'means test'
calculation results in the Debtors having over $800.00 per month available to pay their unsecured
debts. (Doc. No. 1). When a presumption of abuse arises, an individual debtor wishing to maintain
the protections of the Bankruptcy Code generally has two options: (1) convert, and seek to repay
some or all of their debts by formulating a plan of reorganization under Chapter 13 of the Bankruptcy
Code; or (2) the debtor may seek to rebut the presumption of abuse as provided in § 707(b)(2)(B)(i).
It is the lack, according to the Debtors, of the first option as a viable alternative which forms the core
of their objection to the UST's Motion to Dismiss. To understand the merits of this position, it is first
helpful to understand the interrelationship which now exists between the Chapter 7 'means test' and
the requirements of Chapter 13 plan of reorganization.

Page 3

**In re Larry and Tracy Castle**
**Case No. 06-30266**

For debtors who seeks to reorganize their financial affairs under Chapter 13 of the Code, as opposed to seeking Liquidation in accordance with Chapter 7, § 1325 sets forth the necessary prerequisites to have a plan of reorganization confirmed by the court. Among its requirements, the debtor, unless paying all claims in full, is required to devote all of their "projected disposable income" to the plan over its length which, depending on the circumstances, is to be either three or five years in length.[2] 11 U.S.C. § 1325(b)(1)(B). This, as now briefly explained, is a formulaic approach, and for those debtors with income above the state median, it is closely interwoven with the 'means test' calculation of § 707(b)(2), thereby providing symmetry between the two.

A debtor's "disposable income" for purposes of § 1325(b)(1)(B) is defined by first looking to the "current monthly income received by the debtor . . ." 11 U.S.C. § 1325(b)(2). "Current monthly income" is defined in § 101(10A) and generally means the average income received by the debtor and his or her spouse from all sources during the preceding six months. This same definition is also applied when calculating whether a presumption of abuse arises under § 707(b)(2)(A)(i).

After arriving at the debtor's "current monthly income," "disposable income" is then computed by subtracting from this figure those "amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . ." 11 U.S.C. § 1325(b)(2)(A)(i). For those debtors who are above the applicable median family income for a household of the same size in that state, § 1325(b)(3) goes on to provide that "amounts reasonably necessary to be expended . . . shall be determined in accordance with *subparagraphs (A)* and (B) of section 707(b)(2) . . . ." (emphasis added). As explained, *supra*, it is subparagraph (A) which

---

[2]

The length of a debtor's plan, termed the 'applicable commitment period," is determined by looking to those requirements under paragraph (4) of § 1325(b). Generally speaking, under this provision, if the debtor's current monthly income is below the median income for a household of that size in that state, the plan must be three years in length; otherwise, the plan must be five years in length.

Page 4

In re Larry and Tracy Castle
Case No. 06-30266

contains the 'means test.' It is thus this provision which, on the expense side of the equation, aligns the "disposable income" calculation with the 'means test' of Chapter 7.

Left then at this stage, the 'means test' calculation under § 707(b)(2)(A)(i) will exactly mirror the "disposable income" calculation of § 1325(b). And for most debtors with income above the state median, no further adjustments are necessary. Ergo, unless the debtor is unable to meet either the $10,000.00 or $6,000.00 repayment thresholds as set forth in subclauses (I) and (II) of § 707(b)(2)(A)(i), the 'means test' calculation of § 707(b)(2)(A) will also yield the amount of "disposable income" the debtor will be deemed to have available to fund a Chapter 13 plan.

However, this symmetry between the 'means test' and the "disposable income" formula of § 1325(b) is not absolute. As the Debtors correctly point out, the term "current monthly income," although utilized in both § 707(b)(2)(A)(i) and § 1325(b)(2), have a key difference: unlike under § 707(b), in § 1325(b)(2) it is specifically provided that, when computing "disposable income," one is to exclude "child support payments, . . . for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child." Resultantly, in situations where a debtor is receiving child support payments, the 'means test' calculation of § 707(b)(2)(A)(i) will not yield the same amount that must be paid into a Chapter 13 plan.

It is this incongruity which gives rise to the Debtors' position that they should be able to proceed in a liquidating Chapter 7 bankruptcy, notwithstanding that a presumption of abuse exists. To this end, the Parties did not materially dispute these key points: First, the Debtor, Tracy Castle, receives over $1,000.00 per month in child support payments. Second, it is the inclusion of this income in the 'means test' calculation which results in the presumption of abuse arising under

Page 5

**In re Larry and Tracy Castle**
**Case No. 06-30266**

§ 707(b)(2)(A).[3] Third, by subtracting the child support payments when calculating the amount of "disposable income" to pay into a Chapter 13 plan of reorganization, the Debtors presently have no funds available to pay unsecured creditors -- that is, they would propose a 0% plan.

Based upon these points, the Debtors, in seeking to have their Chapter 7 case proceed, approach the matter from a pragmatic standpoint, arguing that it makes no sense -- in their own words, "a colossal waste of time and money" -- to apply the presumption of substantial abuse which arises under § 707(b)(2)(A) when, even if their case were to be converted to Chapter 13, the remuneration to unsecured creditors, if any, would be negligible. (Doc. No. 53, at pg. 4-5). In advancing this theory, the Debtors make what can be grouped into two arguments.

First, the Debtors seek to show that a negligible distribution to unsecured creditors in a Chapter 13 plan constitutes a "special circumstance" within the meaning of § 707(b)(2)(B)(i), with this section providing the sole means by which the presumption of abuse in the filing of a Chapter 7 case may be rebutted. Second, the Debtors maintain that, in their circumstances, the 'means test' of Chapter 7 and the "disposable income" calculation under Chapter 13 are derived from "conflicting sections that seem to give a result demonstrably at odds with the intent of the other section." (Doc. No. 53, at pg. 3). Accordingly, the Debtors maintain that because of inherent conflicts with the two statutes' compatibility, they should be given the benefit of the doubt, and hence be permitted to proceed with their Chapter 7 case.

---

[3]
For purposes of the 'means test' calculation, the UST also questioned certain other expenses of the Debtors. A primary concern: the Debtors were taking deductions for payments that were due on property which the Debtors intended to surrender, with the UST taking the position that such deductions are improper. This issue, however, was not fully placed in controversy before the Court. Even so, based upon this Court's ensuing discussion, resolution of this issue has no bearing on this matter's ultimate outcome. Hence, this issue will not be addressed at this juncture.

Page 6

In re Larry and Tracy Castle
Case No. 06-30266

Turning now to the first theory advanced by the Debtors, it is provided in § 707(b)(2)(B)(i) that:

> In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

The effect of this section is to give the Court some discretion, albeit circumscribed, to allow changes in the 'means test' equation when equity so compels. This authority, as the Debtors point out, may include making downward adjustments in their income when justified. But § 707(b)(2)(B)(i) also makes it clear: to "justify" such an adjustment, there must exist "special circumstances."

The term "special circumstances" in § 707(b)(2)(B)(i) is not specially defined, with its character and qualities being indicated by two examples: serious medical condition or call to active duty in the Armed Forces. For these examples, the Debtors readily concede that their particular circumstances do not give rise to either. Instead, the Debtors ask that the Court extend the meaning of "special circumstances" to their present situation – that of being unable to fund a Chapter a meaningful Chapter 13 plan.

The issue as to whether a *de minimis* payout to unsecured creditors constitutes a "special circumstance" under § 707(b)(2)(B)(i) has been previously addressed by another court, and answered with an uncompromising no. *In re Johns*, 342 B.R. 626, 629 (Bankr. E.D.Okla 2006). While the court in *In re Johns* did not explain its reasoning in detail, it is hard to find any fallacy with its conclusion: that the "potential payback of zero percent to unsecured creditors is a Chapter 13 is not a special circumstance contemplated under § 707(b)(2)(B)."

Page 7

**In re Larry and Tracy Castle**
**Case No. 06-30266**

Nothing in the Bankruptcy Code prohibits a debtor from submitting a Chapter 13 plan of reorganization having little or no value to unsecured creditors so long as it meet the Code's other requirements – e.g., having been proposed in good faith, § 1325(a)(3), meeting the best interest of creditors test of § 1325(a)(4). And while such plans are not favored, there exist a logical disconnect that a "special circumstance" under the Bankruptcy Code could arise from a situation which the Code otherwise permits.

To be sure, the two examples given of "special circumstances" in § 707(b)(2)(B)(i) are just that: examples, and thus do not constitute the only types of circumstances which may be used to rebut a presumption of abuse. *Id*. But they do show a commonality; they both constitute situations which not only put a strain on a debtor's household budget, but they arise from circumstances normally beyond the debtor's control. *See In re Jass*, 340 B.R. 411, 418 (holding that in considering expenses under section 1325(b), court must apply standards under § 707(b)(2)(B) and allow a debtor who fails the means test to rebut the presumption of abuse by showing special circumstances such as a change in income or expenses). Under the statutory interpretation canon of *ejusdem generis*, a court is to limit the sphere of permissible "special circumstance" to one's having such similar traits and characteristics. This interpretive doctrine, meaning literally 'of the same kind,' holds that a court is to interpret legislatively provided examples of a specific nature as typical of the general category covered. *U.S. v. Parson*, 955 F.2d 858, 869 fn.15 (3rd Cir. 1992).

The common traits given in the examples provided by § 707(b)(2)(B)(i), however, simply do not match what the Debtors seek to do. The Debtors in this matter seek to use the general phrase "special circumstances" in § 707(b)(2)(B)(i) to modify what Congress made explicit; that only in a Chapter 13 case, not a Chapter 7 case, could the term "current monthly income" exclude child support. And where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and

Page 8

**In re Larry and Tracy Castle**
**Case No. 06-30266**

purposely in the disparate inclusion or exclusion." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004).

Of course, as the Debtors put forth in their second argument, the Court must look beyond the language of a statute, when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress. *Tran v. Gonzales*, 447 F.3d 937, 941 (6th Cir.2006). However, this does not mean that this Court can substitute its judgment for that of Congress. And while the Court does agree that the application of the newly enacted BAPCPA does produce results that were not previously condoned, it cannot be concluded that such results were not intended.

For example, as the Debtors themselves point out, "there are public policy reasons involved with child support." (Doc. No. 53, at pg. 4). But it does not also follow that for those debtors who receive child support, liquidation under Chapter 7 is preferable to staying under the protection of the Court in a Chapter 13. Advantages, in terms of the family unit, potentially exist with proceeding under a Chapter 13. To name just one, while in a Chapter 13 bankruptcy, debtors are not permitted to incur debt or dispose of assets outside the ordinary course. 11 U.S.C. §§ 363(b)(1), 364(b), 1303. Hence, the behavior which originally lead to the debtor's financial problems may be partially alleviated, at least for a period of time, thus benefitting the children. Another practicable consideration also exist for the Bankruptcy Code's modified treatment of child support payments in a Chapter 13 case.

During the course of a Chapter 13, a debtor's plan may be modified, upon request by the trustee, to increase payments. 11 U.S.C. § 1329(a)(1). To this end, child support payments are not of indefinite duration. Thus, were child support payments to terminate during the course of a chapter 13, funds would then be made available to pay unsecured creditors. The same would also be true, if the debtor's income or expenses were to change favorably during this period of time.

Page 9

**In re Larry and Tracy Castle**
**Case No. 06-30266**

    In summation, the Court cannot find that the Debtors' situation, whereby they may presently not have the funds available to formulate a meaningful Chapter 13 repayment plan, is a sufficient basis to make an exception to the 'means test' promulgated by Congress. Accordingly, with the 'means test' resulting in a presumption of abuse, the Debtors, at this time, are not entitled to obtain relief under Chapter 7 of the United States Bankruptcy Code. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

    Accordingly, it is

    **ORDERED** that the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b), be, and is hereby, GRANTED.

    **IT IS FURTHER ORDERED** that this case be, and is hereby, DISMISSED.

Dated: September 11, 2006

                      Richard L. Speer
                      United States
                      Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **GRADY L. SPARKS, III** | § | Case No. 06-10012 |
| | § | |
| Debtor | § | Chapter 13 |

## MEMORANDUM OF DECISION

This matter is before the Court to consider confirmation of the Debtor's First

Amended Chapter 13 Plan proposed by Grady L. Sparks, III ("Debtor"), the Debtor in the

above-referenced case.  Ronald E. Stadtmueller, Chapter 13 Trustee, objected to the

confirmation of the Plan on the grounds that the Debtor is not applying all of his projected

disposable income in the applicable commitment period of five years to make payments to

unsecured creditors, in contravention of 11 U.S.C. §1325(b)(1)(B).[1]  At the conclusion of

the hearing, the Court took the matter under advisement.  This memorandum of decision

disposes of all issues pending before the Court.[2]

### Background

The Debtor, Grady L. Sparks, III, filed a voluntary petition for relief under Chapter

13 of the Bankruptcy Code and seeks to confirm his First Amended Chapter 13 Plan

---

[1] Other confirmation objections raised by the Trustee were resolved prior to the hearing.

[2] This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a).  The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

which, from the total plan base of $32,700.00,[3] proposes to pay a total of $9,227.38 to

creditors with allowed general unsecured claims.[4]  Because this single Debtor admittedly

has a current monthly income which, when extrapolated into an annual amount, exceeds

the median family income for single-earner households in this state,[5] 11 U.S.C.

§1325(b)(3) mandates that his deductions of reasonable and necessary expenses from his

current monthly income to determine his disposable income are subject to certain

standards set forth in §707(b)(2).  In the absence of the allowance of certain expenses not

contemplated by the standards issued by the Internal Revenue Service which are

incorporated into §707(b)(2)(A), that disposable income calculation, as calculated

through Part V of Form B22C,[6] would require a monthly payment to unsecured creditors

of $434.12 for the 60-month period, for a total sum of $26,047.20, and the Trustee bases

his disposable income objection upon that calculation.  However, the Debtor asserts that

his monthly disposable income is actually significantly lower due to additional monthly

expenses which he asserts are reasonable and necessary for his maintenance and support

---

[3] The Debtor's plan proposes to pay the sum of $545.00 per month for the applicable commitment period of five years.

[4] The Trustee actually projects in his confirmation report that the plan would generate $9,704.62 for general unsecured creditors — a 53.02% dividend based upon the Debtor's $18,305 estimate of his total general unsecured debt.

[5] The Debtor's current monthly income of $4,174.83, which extrapolates into an annual income of $50,097.96, exceeds the $33,280.00 which is currently recognized as the applicable median family income for one-earner households in Texas.

[6] Ex. P-2. New Official Form B22C is utilized in Chapter 13 cases to implement the provisions of 11 U.S.C. §§1325(b)(3) and (b)(4).

and can be legitimately deducted pursuant to 11 U.S.C. §1325(b)(3).

## Discussion

In the context of considering confirmation of a Chapter 13 plan proposed by a debtor who is not engaged in business, 11 U.S.C. §1325(b) now provides, in relevant part, that:

> (b)(1)  [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
>
>> (A)  the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>>
>> (B)  the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2)  For purposes of this subsection, "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended —
>
>> (A)(i)  for the maintenance or support of the debtor or a dependent of the debtor . . . ;[7]

Because the Debtor's current monthly income exceeds this state's median family income

---

[7] If a debtor is engaged in business, §1325(b)(2)(B) also deletes from "disposable income" any income which must be expended "for the payment of expenditures necessary for the continuation, preservation, and operation of such business."

for a comparable household,[8] the following provisions of §1325(b)(3) are invoked:

> (3) Amounts reasonably necessary to be expended under paragraph (2) shall
> be determined in accordance with subparagraphs (A) and (B) of section
> 707(b)(2), if the debtor has current monthly income, when multiplied by 12,
> greater than—
>> (A) in the case of a debtor in a household of 1 person, the
>> median family income of the applicable State for 1 earner;
>> (B) in the case of a debtor in a household of 2, 3, or 4
>> individuals, the highest median family income of the
>> applicable State for a family of the same number or fewer
>> individuals; or
>> (C) in the case of a debtor in household exceeding 4
>> individuals, the highest median family income of the
>> applicable State for a family of 4 or fewer individuals, plus
>> $525 per month for each individual in excess of 4.

Thus, as a result of the passage of the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 ("BAPCPA"), the former system of determining the

reasonableness and necessity of expenditures in a calculation of disposable income

through an evaluation of Schedules I and J has been supplemented by the required overlay

of the standards otherwise utilized in §707(b)(2) to determine whether a presumption of

abuse exists in a Chapter 7 case.  Such "means test" standards are implemented through

the use of Official Form B22C and are now used in the Chapter 13 context to gauge the

necessity and reasonableness of expenses in specified categories by comparing them to

---

[8] *See supra* note 5.

-4-

financial standards devised by the Internal Revenue Service in those categories. In applying these §707(b) standards only to Chapter 13 debtors whose current monthly income exceeds the median income of persons in their state, Congress implicitly recognized that, without the invocation of appropriate limitations, a higher level of monthly income enjoyed by a Chapter 13 debtor would likely be consumed in a lifestyle characterized by a higher level of monthly expenditures. Thus, in an effort to insure that a significant payment to unsecured creditors would actually be made by those persons whose monthly income reflected such an ability, Congress incorporated the §707(b) standards into §1325(b)(3) as a statutory ceiling for those enumerated expense categories, thereby precluding the allowance of any improper discretionary spending by higher income debtors in Chapter 13.[9] This process, as implemented through the use of Official Form B22C, will produce a calculation of disposable income which in most instances will become the amount of "projected disposable income" required for plan confirmation under §1325(b)(1)(B), unless the projected amount is increased by the Court as the result

---

[9] Of course, the result the Congress is attempting to produce by the statutory invocation of the IRS standards is exactly the goal which this and other courts have sought to reach in pre-BAPCPA rulings on disposable income in Chapter 13 cases. *See, e.g., In re Johnson*, 241 B.R. 394, 399 (Bankr. E.D. Tex. 1999) quoting *In re Gonzales*, 157 B.R. 604 (Bankr. E.D. Mich. 1993) ["Thus the proper methodology is to aggregate all expenses projected by the debtor which somewhat more discretionary in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which, for lack of a better term, will be called "discretionary spending."...If the discretionary expenses in the aggregate allow the Debtors to exceed their basic needs, including a reasonable reserve for recreation and exigencies (the reasonable "cushion"), then their plan cannot be confirmed."] *Id.* at 608-09 (citations omitted). Obviously the Congress was either ill-informed or unimpressed by such judicial efforts.

of a more detailed examination of the reasonableness of the debtor's expenditures[10] or the projected amount is reduced because the debtor demonstrates a substantial change in circumstances which decreases the availability of future income.[11]

Yet consideration of the particular circumstances of a higher income Chapter 13 debtor has not been completely precluded.  In determining amounts reasonably necessary to be expended under §1325(b)(2) "in accordance with subparagraphs (A) and (B) of section 707(b)(2)," a higher income Chapter 13 debtor may demonstrate:

> (i) . . . special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances ~~that~~ [sic] justify additional expenses or adjustments of current monthly income *for which there is no reasonable alternative.*

> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide–

>> (I) documentation for such expense or adjustment to income; and

---

[10] This Court has already experienced anomolies in this process in cases in which the B22C calculation has produced a zero or a negative number but which involve debtors who admittedly have disposable income available for distribution to unsecured creditors.  In the opinion of this Court, the phrase "in accordance with" as utilized in §1325(b)(3) means that the standards imposed by that subsection cannot be violated during the determination of whether proposed expenditures are reasonable and necessary.  However, the fact that a debtor proposes a plan with a payment amount to unsecured creditors equivalent to the B22C calculation does not necessarily constitute compliance with the §1325(b)(1)(B) standard and does not preclude the Court from engaging in a further evaluation of the reasonableness of the debtor's expenses.

[11] As courts construing the statutory changes in this area have already concluded, "'projected disposable income' under section 1325(b)(1)(B) necessarily refers to income that the debtor reasonably expects to receive during the term of the plan," *In re Hardacre*, 338 B.R. 718, 723 (Bankr. N.D. Tex. 2006), and the *projected* disposable income may vary from the disposable income calculation if "the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." *In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006).  *See also, In re Grady*, 343 B.R. 747 (Bankr. N.D. Ga. 2006) [court must consider the change in circumstances caused by joint debtor's recent inability to work due to medical problems in determination of the debtors' projected disposable income].

> (II) a detailed explanation of the special circumstances that
> make such expenses or adjustment to income necessary and
> reasonable.

> (iii) The debtor shall attest under oath to the accuracy of any information
> provided to demonstrate that additional expenses or adjustments to income
> are required.

11 U.S.C. §707(b)(2)(B) (emphasis added).[12]  Thus, the incorporation of the means test

standards into the disposable income calculation established by §1325(b) allows an

affected higher income Chapter 13 debtor to establish the existence of "special

circumstances" which justify the recognition and allowance of additional categories of

expense or an adjustment to the calculation of current monthly income.[13]

It is under this "exception" to the means test standards that the Debtor seeks the

allowance of an additional $608 per month in the following expense categories: rent –

$203; and transportation expenses – $405.  In an attempt to fulfill his evidentiary

obligation under §707(b)(2)(B)(ii) and (iii), the Debtor presented testimony as well as

documentary evidence.  As to the rental expense, the Debtor admitted that he is a single

man with a 3-bedroom apartment in Orange.[14]  He testified that his actual monthly rent is

---

[12]  Since §707(b)(2)(B)(iv) relates solely to the rebuttal of the presumption of abuse in a Chapter 7 case, it is irrelevant to a consideration of disposable income in a Chapter 13 case.

[13]  In the context of a Chapter 7 case, the establishment of these special circumstances would rebut the presumption of abuse which would otherwise preclude the availability of relief under Chapter 7.

[14]  The Debtor testified that, as of the time of his initial rental, there were no 2-bedroom apartments available and that he has not checked back with management regarding such availability since he enjoys the extra room.  He made no reference to seeking a 1-bedroom apartment nor did he indicate whether any utilities were provided in conjunction with the lease.

$695 — $203 per month over the $492 allowed under the B22C standards — and that he seeks approval of this "special circumstance" since he is still bound by the apartment lease, the apartment is a bit larger than normally available in the area, and it has an enclosed garage for his vehicle.  As to his transportation expenses, the Debtor seeks recognition of his actual auto insurance premium of $195 per month, although he acknowledged that it would soon be lowered from $195 to $167 per month.  As to his other transportation expenses regarding his 2000 Chevrolet 1500-series truck, the Debtor seeks approval of an additional $210 per month over the $242 authorized under the B22C standards.  He testified that his current employment required a round-trip of 40 miles per day and that he often traveled to see family members in Vidor and Port Neches.  He admitted that almost $100 of the requested monthly charge is for annual registration fees, tires, periodic oil changes and other repairs.  No documentation was tendered to the Court regarding the automotive expenses.[15]

While the use of the §707(b)(2) standards in calculating a higher income debtor's disposable income in Chapter 13 includes the opportunity to establish the existence of "special circumstances," this exclusion is not as flexible as this debtor pretends.  Indeed the availability of these expense increases is considerably more restrictive than proving that a particular expense was "reasonably necessary" under the pre-BAPCPA standard.

---

[15]  The Court must also note that, in Schedule J listed as an "itemized personal expense," the Debtor seeks approval of $40 in monthly expenses to repair a non-operating second car which apparently is not recognized nor treated under Schedule B22C.

This is demonstrated by the fact that §727(b)(2)(B)(i) specifically mentions a serious medical condition or a call to active duty into the military as examples of the type of special circumstance that the subsection contemplates as justifying additional expenses or income adjustments.  While those examples are undoubtedly intended as illustrative rather than exclusive, they depict the type of unanticipated development which leaves a debtor with *no reasonable alternative* but to incur the expense or accept the income adjustment. Special circumstances for the purposes of §727(b)(2)(B) or §1325(b)(3) are certainly not demonstrated merely by showing that the Debtor has incurred these expenses in the past. This exception is not available to justify the approval of expenses incurred merely at a debtor's discretion, the impact of which can be minimized, if not eliminated, through careful consideration of the remedies available to debtors under the Bankruptcy Code. Instead this exception to the parameters of acceptable expenses must be strictly construed to allow only those expenses which are truly unavoidable to the debtor.  It should be strictly construed so as to coerce the higher income debtor in a Chapter 13 proceeding to adjust his living expenditures to an acceptable level.  It should not be viewed as a panaceanic pathway by which a higher income debtor may achieve the justification of excessive spending patterns which created the necessity to seek Title 11 relief.  To interpret it otherwise would undermine some major objectives of the BAPCPA amendments in this area — to preclude the allowance of any improper discretionary spending by higher income debtors in Chapter 13 and to enhance distributions to

-9-

unsecured creditors as a result.

The Debtor has failed in this instance to demonstrate the existence of special circumstances which warrant the approval of these additional expenses. These expenses did not arise from unanticipated developments. The Debtor has not shown that he lacks any reasonable alternative to the option of incurring these expenses on a monthly basis. Instead the Debtor requests that the Court simply endorse his pre-petition decision-making and relieve him of the burden of having to comply with the expense standards now imposed upon higher income debtors by §1325(b)(3). The Court cannot do so under these circumstances.[16]

Accordingly, the Court concludes that the objection of the Chapter 13 Trustee must be sustained and that confirmation of the Debtor's Chapter 13 plan should be denied. In light of this initial denial of confirmation, the Debtor shall file a new Chapter 13 plan within thirty (30) days of the date of this Order and, in the event that the Debtor fails to do so, absent a further order of the Court extending such deadline for cause shown, or in the event that the Debtor thereafter fails to confirm such new Chapter 13 plan upon consideration by this Court under its normal procedures, this Chapter 13 case shall be dismissed, pursuant to §349(a) of the Bankruptcy Code, without further notice or hearing and with prejudice to the rights of the Debtor to file a subsequent petition under

---

[16] It also appears as if other expense categories of the Debtor exceed that level which could be fairly characterized as reasonable and necessary. However, in light of the ruling, the Court need not reach such issues.

-10-

any chapter of Title 11, United States Code, for a period of one hundred twenty (120) days from the entry of the order of dismissal.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[17] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014.  A separate order will be entered which is consistent with this opinion.

---

[17] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such.  To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.  The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

-11-