**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **SAUL EISEN,** ) | Case No. 1:06 CV 2843 |
| **UNITED STATES TRUSTEE,** ) | |
| ) | |
| Appellant, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| **GREGORY B. THOMPSON, et al.,** ) | |
| ) | |
| Appellees. ) | |

United States Trustee Saul Eisen ("Trustee") appeals the bankruptcy court's order denying his motion to dismiss this Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1). For the following reasons, the Court **REVERSES** the bankruptcy court's order.[1]

**I.**

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23 (2005) ("the 2005 Act"), was signed into law on April 20, 2005. The 2005 Act amended, among other things, 11 U.S.C. § 707(b) of the Bankruptcy Code.[2] Prior to the 2005 amendments, § 707(b) contained a presumption "in favor of granting the relief requested by

---

[1] The bankruptcy order from which this appeal is taken is reported at *In re Thompson*, 350 B.R. 770 (Bankr. N.D. Ohio 2006).

[2] Henceforward, all references to various statutory sections (§) are to Title 11 of the United States Code (also referenced as the "Bankruptcy Code" and "Code").

the debtor," regardless of the debtor's assets, income, debts, or ability to pay some or all of his debts. *In re Sorrell*, 359 B.R. 167, 178-79 (S.D. Ohio 2007). This presumption could only be overcome if, upon a motion of the bankruptcy court or United States Trustee, the court determined that "granting the relief requested would be a substantial abuse" of Chapter 7. *Id.* The 2005 Act eliminated both the presumption in favor of granting the requested relief, and the requirement that "substantial" abuse be shown to dismiss a Chapter 7 filing. *Id.* A debtor requesting Chapter 7 relief now faces "a burden-filled application process, containing, depending upon the information provided, and subject to challenge from an expanded number of entities granted standing to bring such actions, a presumption against the relief available in a Chapter 7 case." *Id.*

In determining whether granting relief would be an abuse of Chapter 7, a bankruptcy court must now "presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater, or (II) $10,000."[3] § 707(b)(2)(A)(i). The amounts in clause (ii) are the debtor's basic monthly living expenses and "other necessary expenses," not including payments for debts. § 707(b)(2)(A)(ii). The amounts in clause (iii) are the debtor's average

---

[3] On April 1, 2007, these figures were changed to $6,575.00 and $10,950.00, respectively. At the time of the Thompsons' filing, the lower amounts were in effect. The lower amounts will be used throughout this opinion.

-2-

monthly payments "on account of secured debts," calculated as the sum of:

> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
> divided by 60.

§ 707(b)(2)(A)(iii). The amounts in clause (iv) are the debtor's expenses for payment of all priority claims, including child support and alimony. § 707(b)(2)(A)(iv). If, however, the combined current monthly income of the debtor and the debtor's spouse is less than or equal to the median family income for a household the same size as the debtor's in the applicable state, the presumption of abuse cannot arise. § 707(b)(7).

Every debtor who owes primarily consumer debts in a Chapter 7 case is required to file, in conjunction with bankruptcy schedules and a statement of financial affairs, a Statement of Current Monthly Income and Means Test Calculation, Official Form B22A ("Means Test Form"). §§ 521, 707(b)(2)(C); Interim Fed. R. Bankr. P. 1007(b)(4). This is the official form approved by the Judicial Conference of the United States to perform the § 707(b) means test. The ultimate result of the means test is a calculation of the debtor's monthly disposable income, which is used to screen Chapter 7 petitions for abuse. If the debtor's monthly disposable income is less than $100.00 ($6,000.00 over 60 months), the presumption of abuse does not arise. If the monthly disposable income is equal to or exceeds $166.67 ($10,000.00 over 60 months), the presumption of abuse arises. If the monthly disposable income is between $100.00 and $166.67, the presumption of abuse arises if that amount, over 60 months, is sufficient to pay at least 25 percent of the debtor's nonpriority unsecured debt. § 707(b)(2)(A)(i).

-3-

If the presumption of abuse arises, a court, on its own motion or on the motion of a United States Trustee or other party in interest, may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily unsecured consumer debts. § 707(b)(1). A filing under Chapter 7 in which the presumption of abuse arises can, with the debtor's consent, be converted to a filing under Chapters 11 or 13 of the Bankruptcy Code.[4] *Id.*

## II.

On January 5, 2006, debtors Gregory and Patricia Thompson filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. On their petition, the Thompsons listed assets of $152,600.00 and liabilities of $245,468.17, including $46,059.60 in unsecured consumer debts. The petition indicated that Mr. Thompson had been employed as an electronics technician with Codonics, Inc., for seven years, and that Mrs. Thompson had been employed as an office manager with Walco Organization, Inc., for twenty-four years.

Mr. Thompson voluntarily participated in Codonics's ERISA-qualified 401(k) ("retirement" or "401(k)") plan, administered by Merrill Lynch. In May 2004, Mr. Thompson borrowed $29,719.00 from his retirement plan, and was required to repay the loan with 117 payments of $283.90, deducted directly from his bi-weekly paycheck. This was Mr. Thompson's second such loan within a five-year period. The loan agreement stated that the plan administrator would debit the amount of the loan from Mr. Thompson's account balance, and payments made on the loan would be credited back to his account. The agreement also stated that Mr. Thompson would grant the plan a security interest in fifty percent of his vested account

---

[4]A Chapter 7 proceeding generally results in the total discharge of a debtor's unsecured debts, whereas a Chapter 13 proceeding is a prospective one that generally results in the creation of a repayment plan, and a partial discharge of a debtor's unsecured debts.

-4-

balance. If Mr. Thompson no longer earned any income from Codonics and could not repay his 401(k) loan, the plan administrator would deduct the amount Mr. Thompson still owed from the security interest it retained in Mr. Thompson's vested account balance, and repay the loan with this deduction. Mr. Thompson would then have to treat this deduction as a distribution. A distribution from a 401(k) account has tax consequences, and can be subject to an early withdrawal penalty under certain circumstances. On Schedule D of the Thompson's bankruptcy petition, Merrill Lynch was listed as a creditor holding a secured claim of $21,032.27 (the outstanding balance on the 401(k) loan), and the 401(k) loan was listed as being the property subject to lien.

With the bankruptcy petition, the Thompsons submitted a Means Test Form. On line 26 of the form, entitled "Other Necessary Expenses: mandatory payroll deductions," the Thompsons listed an amount of $615.00, which was the average monthly repayment amount of Mr. Thompson's retirement plan loan.[5] The means test resulted in a monthly disposable income of (-$241.93), and the Thompsons indicated on the form that a presumption of abuse does not arise.

On February 14, 2006, the Thompsons amended their bankruptcy petition and Means Test Form.[6] The amended form removed the $615.00 from the "Other Necessary Expenses: mandatory payroll deductions" line, and added a 60-month average payment of $350.54 on line 42(b) for "Future payments on secured claims," listing Merrill Lynch as the

---

[5] A bi-weekly repayment structure results in 26 payments a year. 26 payments, multiplied by $283.90, the bi-weekly repayment amount, equals $7381.40. $7381.40 divided by twelve months results in an average monthly payment of $615.12.

[6] Bankruptcy Rule 1009 provides for a general right to amend schedules and statements "as a matter of course at any time before the case is closed."

creditor, and a 401(k) loan as the property securing the debt.[7] The result of the amended means test was a monthly disposable income of $95.53, just under the $100.00 presumption of abuse threshold.

The Trustee, as required by § 704(b)(1), reviewed the Thompsons' petition and determined that the retirement loan was not a "secured debt" under § 707(b)(2)(A)(iii) (hereafter, "Subsection (iii)"). The Trustee eliminated the $350.54 amount from the means test, and calculated a monthly disposable income of $446.07, exceeding the presumption of abuse threshold of $166.67. On February 17, 2006, the Trustee filed a Motion to Dismiss the bankruptcy filing, based on a presumption of abuse.[8]

At an evidentiary hearing held on May 12, 2006, the Thompsons argued that the retirement plan loan was a "secured debt" under Subsection (iii). Alternatively, the Thompsons argued that repayment of the retirement plan loan constitutes either "Other Necessary Expenses" under § 707(b)(2)(A)(ii)(I), or "special circumstances" under § 707(b)(2)(B). Any one of these theories would have been sufficient to rebut the presumption of abuse.

The bankruptcy court denied the Trustee's motion to dismiss on two grounds. First, the court found that the retirement plan loan was a "secured debt" under Subsection (iii), and was correctly calculated on the amended Means Test Form. Second, the court found that

---

[7] This figure was calculated, as instructed by the Means Test Form, by taking the balance owed on the 401(k) loan, $21,032.27, and dividing that amount by 60.

[8] It is undisputed that the Thompsons' income was above the median for a two person household in the State of Ohio.

-6-

even if a presumption of abuse does arise under § 707(b), the Thompsons successfully rebutted that presumption by demonstrating "special circumstances" under § 707(b)(2)(B).[9]

### III.

In an appeal taken from a bankruptcy court order, a district court reviews *de novo* the bankruptcy court's conclusions of law. *In re Isaacman*, 26 F.3d 629, 631 (6th Cir. 1994). The first issue the Court must address, i.e., whether the Thompsons can claim their 401(k) loan payments as payments on account of a "secured debt" under Subsection (iii), is a question of law subject to *de novo* review.

The second issue, i.e., whether the Thompsons' 401(k) loan payments constitute "special circumstances" sufficient to rebut the presumption of abuse under § 707(b)(2)(B), is a mixed question of law and fact. The standard of review in that instance is abuse of discretion. Abuse of discretion is defined as a

> definite and firm conviction that the [court below] committed a clear error of judgment. The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.

*In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 529 (6th Cir. 2002). The lower court's ruling should be reversed if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Elec. Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (*citing Blue Cross & Blue Shield Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)).

---

[9] The court also held that the loan payments were not, as the debtors argued, "Other Necessary Expenses" under § 707(b)(2)(A)(ii)(I). The debtors did not file a notice of appeal of this holding, and the Court will not consider this issue. Fed. R. Bankr. P. 8001(a).

**IV.**

**A.**

The bankruptcy court ruled that the Thompsons' 401(k) loan is a secured debt, such that its repayments should be deducted from their income under Subsection (iii). The question of how to account for such loan payments in the means test calculation is a recurring issue of national significance since debtors often borrow from their 401(k) plans prior to seeking bankruptcy. In fact, as the Trustee pointed out, almost 25 percent of 401(k) plan participants borrow from their retirement funds, at an average amount of $6,765.00 per participant. (*Reply Br.* at 2 (citation omitted).) At first blush, this issue appeared to be a simple one: if it looks like a debt and smells like a debt, it must be a debt. However, after reading the briefs and the cases on point, my assessment has changed. For the following reasons, I conclude that retirement plan loans are neither "debts" nor "secured debts" under the Bankruptcy Code.

In conducting *de novo* review of this issue, the Court must first look to Code provisions to determine whether a retirement plan is a "secured debt" for purposes of the means test. *See Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985). As the bankruptcy court noted, the Code defines the words "debt" and "claim," but does not define the term "secured debt." *In re Thompson*, 350 B.R. 770, 774 (Bankr. N.D. Ohio 2006). "Debt" is defined as "liability on a claim," § 101(12), and "claim" is defined as "right to payment," § 101(5). Courts have long held that the words "debt" and "claim" are coextensive under the Code. *Johnson v. Home State Bank*, 501 U.S. 78, 84-85, n. 5 (1991); *In re Glance*, No. 06-1630, — F.3d —, 2007 WL 1574392, at *2 (6th Cir. Jun. 1, 2007) (citations omitted). Reading the definitions coextensively, the loan constitutes a debt under the Code only if the creditor (here, retirement

plan administrator Merrill Lynch) has a claim for repayment. *McVay v. Otero*, No. EP-06-CV-436-PRM, slip op. at 7 (W.D. Tex. April 26, 2007); *Mullen v. United States*, 696 F.2d 470, 472 (6th Cir.1983). Because the administrator has no claim for repayment against the debtor or the estate,[10] the Court finds that the 401(k) plan loan is not a "debt" under the Code.

Since the Code does not define the term "secured debt," the bankruptcy court looked to Black's Law Dictionary for "the common, ordinary meaning of the term." *In re Thompson*, 350 B.R. 770, 774 (Bankr. N.D. Ohio 2006). Black's Law Dictionary defines a "secured debt" as "a debt backed by collateral."[11] The bankruptcy court summarily concluded, based on this definition, that "a debt secured by a 401(k) plan is a 'secured debt,' even though it is not a 'secured claim' since the 401(k) funds are not property of the estate under § 541(b)(7)." *Id*. There are several problems with this reasoning.

First, the Code defines the terms "debt" and "claim" which are used coextensively throughout the Code and brook no further interpretation.

Second, in concluding that retirement plan loans are "secured debts" under amended Subsection (iii), the bankruptcy court ignores the majority view <u>to the contrary</u> developed over the past 25 years. *See, e.g.*, *In re Esquivel,* 239 B.R. 146, 151 (Bankr. E.D.

---

[10] Retirement plan loans are qualitatively different than secured debts such as home mortgages and car loans. The retirement plan administrator does not loan the plan participant the administrator's money. It simply deducts the requested loan amount from the participant's own account, and credits the loan payments and interest back to the participant's account. If the participant defaults on the loan, the plan administrator deducts the amount owed from the vested account balance, and repays the loan with this deduction. The participant must treat this deduction as a distribution which is taxable as income to the participant in the default year. The participant may also be subject to an early withdrawal penalty. But, the plan administrator has no right to payment under the Bankruptcy Code.

[11]*See* BLACK'S LAW DICTIONARY 331 (7th ed. (abridged) 2000).

Mich. 1999) (observing that there is a clear consensus among courts that an individual's retirement plan loan does not give rise to a "debt" or a secured or unsecured "claim" under the Bankruptcy Code); *see also* Debra Lee Allen, Qualified Plan Loans in Bankruptcy, 18-FEB Am. Bankr. Inst. J. 16 (1999).

The first reported decision addressing the status of a debtor's retirement plan loan is *New York City Employees' Retirement Sys. v. Villarie* ("*Villarie*"), 648 F.2d 810 (2d Cir. 1981). In *Villarie*, a debtor listed the Retirement System, to which he made weekly contributions from his paycheck and from which he had borrowed $670.00, as a "secured creditor" on his Chapter 7 petition. *Id*. at 811. The Retirement System filed an adversary proceeding seeking a declaration that the loan was not a "debt" and, therefore, was not dischargeable in a Chapter 7 proceeding. *Id*. The bankruptcy judge ruled that the loan was a "debt" and discharged it. *Id*. The Second Circuit reversed the ruling on appeal. The appeals court analogized the retirement system to "an annuitant's withdrawal from the savings account of his annuity fund . . . and an insured's advance from the reserve fund of his insurance policy," and held that the loan did not create a debtor-creditor relationship. *Villarie*, 648 F.2d at 812. It noted that the Bankruptcy Code definitions for "claim" and "debt" were coterminous, and found that the Retirement System did not have an enforceable claim against the debtor because it did not have a right to payment or a right to sue him if he defaulted. *Id*. The Retirement System's only recourse was to reduce the future benefits payable to him. Thus, the loan transaction did not create a "debt" dischargeable in bankruptcy. *Id*.

In *Mullen v. United States*, 696 F.2d 470 (6th Cir. 1983), a Chapter 7 debtor sought to hold his employer, the United States Air Force ("USAF"), in contempt for violating the

automatic bankruptcy stay by withholding payment of his retirement benefits. The USAF withheld those benefits because the debtor had failed to pay back an adjustment allowance he had received prior to retirement.[12] Relying on *Villarie* and the legislative history concerning the meaning of "debt" and "credit" in the Bankruptcy Code, the Sixth Circuit concluded that the loan did not create a debtor-creditor relationship. *Id*. at 472. The Sixth Circuit stated that no debt or claim can arise where the debtor is not liable for repayment, and the only remedy available for default is a setoff against the payment of future benefits. *Id*. With few exceptions, the majority of courts considering whether retirement plan loans constitute debts have followed *Villarie*.[13]

Finally, even the court below conceded that 401(k) loans do not give rise to a "secured claim." *In re Thompson*, 350 B.R. at 774. Section 506(a)(1) provides the definition for a secured claim: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in such property." *Id*. It is undisputed that a bankruptcy estate has no interest in retirement accounts, which are expressly exempted under § 522(n). Because the words debt and claim are deemed coextensive, the Court finds that "secured debts" and "secured claims" are likewise coextensive. In other words, because retirement plan loans do not give rise to secured claims under the Code, they do not give rise to secured debts either.

---

[12]Under the USAF's system, repayment of 75 percent of the allowance was a condition precedent to receiving retirement checks. *Mullen*, 696 F.2d at 471.

[13]*See*, *e.g.*, *McVay v. Otero*, No. EP-06-CV-436-PRM (W.D. Tex. April 26, 2007); *In re Jones*, 335 B.R. 203, 210 (Bankr. M.D. Fla. 2005); *In re Esquivel*, 239 B.R. 146, 151 (Bankr. E.D. Mich. 1999); *In re Fulton*, 211 B.R. 247, 264 (Bankr. S.D. Ohio 1997); *In re Scott*, 142 B.R. 126, 151-52 (Bankr. E.D. Va. 1992); *In re Jones*, 138 B.R. 536, 537-78 (Bankr. S.D. Ohio 1991). *But see In re Buchferer*, 216 B.R. 332 (Bankr. E.D.N.Y. 1997) (holding that a debtor's obligation to repay a pension plan loan is a debt because the plan's right to offset the obligation against future benefits constitutes a method of enforcement sufficient to create a right to payment).

The Thompsons acknowledge that, prior to the 2005 Act, 401(k) loans did not constitute secured debts. They argue, nonetheless, that newly amended §§ 362(b)(19) and 523(a)(18) have expanded the definition of "debt" under the Code. This argument lacks merit.

Section 362(b)(19) provides that the filing of a bankruptcy petition does not operate as a stay of amounts withheld from a debtor's paycheck to repay 401(k) loans. This provision is consistent with Congress' intent to preserve retirement accounts during the pendency of bankruptcy proceedings. Moreover, this provision is not inconsistent with characterizing the money used to repay 401(k) loans as income for purposes of the means test – a test purposely designed by Congress to make it more difficult to obtain a total discharge of one's unsecured debts in a Chapter 7 proceeding. *See McVay,* No. EP-06-CV-436-PRM, slip op. at 17.

Section 523(a)(18) provides that "debt[s]" owed to a retirement plan cannot be discharged in bankruptcy. According to a leading bankruptcy treatise, when enacting the 2005 Act, Congress replaced the existing version of § 523(a)(18) "with a different category of debt" excluded from discharge under Chapter 7, i.e., any debt owed to a retirement plan. 4 Collier on Bankruptcy ¶ 523.24A (15th ed. Rev. 2006). Moreover,

> [a]lmost all of the courts have held that retirement plan loans are not bankruptcy debts subject to discharge, primarily based on the rationale that the monies "borrowed" are merely advances from the debtor's own retirement fund which will be deducted from the fund if the debtor does not replace the funds. In enacting section 523(a)(18), Congress has not unequivocally settled the conceptual issue but, instead, has taken a functional approach. Regardless of whether a debtor's obligation to repay a loan from the covered retirement plans or accounts is a debt within the meaning of the Code, the obligation is not dischargeable.

*Id.* Because overwhelming case law preceding the 2005 Act held that 401(k) loans were not "debts" under the Code, and because Congress has not expressly said otherwise, the Court must presume that "debt" retains its pre-2005 Act meaning. *See Horton v. Bank One, N.A.,* 387 F.3d

-12-

426, 429 (5th Cir. 2004); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 988 (7th Cir. 2001); *McVay*, No. EP-06-CV-436-PRM, slip op. at 20.

Nor does newly amended § 1322(f) help the Thompsons. When enacting the 2005 Act, Congress added a clause providing that repayments of a 401(k) loan "shall not constitute 'disposable income' under section 1325." § 1322(f). The bankruptcy court asserts that, "[f]rom a policy standpoint, it makes little sense that Congress would expressly exclude any amounts required to repay 401(k) loans from the definition of 'disposable income' under 11 U.S.C. § 1325, yet include such income for purpose of determining abuse under section 707(b)." *In re Thompson*, 350 B.R. at 776. I disagree. Characterizing 401(k) payments as disposable income in a Chapter 13 proceeding makes sense because 401(k) loans are finite, and Chapter 13 proceedings are prospective. *In re Nowlin*, No. 06-34785, — B.R. —, 2007 WL 1095449, at *3 (Bankr. S.D. Tex. 2007); *In re Lenton*, 358 B.R. 651, 660 (E.D. Pa. 2006); *McVay*, No. EP-06-CV-436-PRM, slip op. at 19-20. Because a 401(k) loan might be paid off within the commitment period of a Chapter 13 case, the Trustee would have the ability to direct newly available funds to creditors. *Id.* Such is precisely the case here. The Trustee has shown that, if this case is converted into a Chapter 13 proceeding, the Thompsons, whose last 401(k) loan payment will occur in November 2008, could repay over $21,000 to their unsecured creditors before the end of a five-year plan. (*Appellant's Br.* at 24.) Such an approach serves both the Congressional intent to protect retirement contributions and to ensure that debtors repay creditors an amount they can afford, a primary goal of the 2005 Act.[14] *Id.*

---

[14]The bankruptcy court has also pointed out that § 1322(f) expressly overruled *In re Harshbarger*, 66 F.3d 775 (6th Cir. 1995), and I agree. In *Harshbarger*, the Sixth Circuit held that 401(k) loan payments constitute "disposable income" for purposes of a Chapter 13 plan. *Id.* at 777. Based on this ruling, the Sixth Circuit found it unnecessary to determine whether, "under

Apparently, the distinction between "disposable income" in a Chapter 13 plan and the calculation of "secured debts" on the means test also made sense to the Judicial Conference, which approved the Means Test Form as well as the "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," Official Form 22C (the "Chapter 13 Form"). The Chapter 7 Form contains a line entitled "Future payments on secured claims" (Line 42). The Thompsons entered their 401(k) loan payments on Line 42, along with their mortgage payments and car loan payments (even though there is no dispute that 401(k) payments are not "secured claims"). The Chapter 13 Form also contains a line entitled "Future payments on secured claims" (Line 47). In addition, however, the Chapter 13 form includes a separate line for "Qualified retirement deductions" (Line 55). If 401(k) loan payments were "future payments on secured claims," there would be no need for Line 55; there is no question that the Thompsons would enter their 401(k) loan payments on Line 55 of the Chapter 13 Form. Thus, although the Thompsons correctly assert that the statute governs over the forms, I believe that the forms are consistent with the statute, as did the Judicial Conference.

In sum, Congress was presumably well aware of the case law holding that 401(k) loans were not "debts" under the Code, and that such obligations did not create creditor-debtor relationships, when it drafted the 2005 amendments. Congress could have easily composed an amendment stating that 401(k) loans constitute "debts" or "secured debts." It could have added 401(k) loan repayments to the list of expenses, under § 707(b)(2)(A), that a debtor may deduct in computing his monthly income for purposes of the means test. Indeed, Congress wrote that

---

bankruptcy law, the loan taken against debtors' ERISA-qualified account was an enforceable debt." *Id*. Although § 1322(f) plainly overrules *Harshbarger*, the Court finds that the section does not have any impact on the meaning of "debt" under § 101(12) or "secured debt" under Subsection (iii) of the means test for reasons explained above.

401(k) loans were not dischargeable in bankruptcy and that the filing of petitions did not operate as a stay on the repayment of those loans. Congress excluded contributions to retirement accounts from property of the estate under § 541(b)(7), and exempted retirement accounts from property of the estate under § 522(n). Obviously, Congress knew well how to craft direct language requiring courts to treat 401(k) loans as secured debts for purposes of the means test, and did not. In the face of overwhelming case law holding that 401(k) loans are not debts under the Code, I will not find otherwise on this record.

Because 401(k) loan payments are not secured debts, the bankruptcy court's ruling on this issue is reversed, and the Thompsons' Chapter 7 petition is presumed abusive.

**B.**

The bankruptcy court found that, even if a presumption of abuse did arise under § 707(b), the Thompsons successfully rebutted that presumption by demonstrating "special circumstances" within the meaning of § 707(b)(2)(B). Under the Code,

> (i) [T]he presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
>
> (ii) in order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide –
>
> (I) documentation for such expense or adjustment to income; and
>
> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

§ 707(b)(2)(B). As the lower court noted, "the language of the 'special circumstances' provision implies fact-specific circumstances." *In re Thompson*, 350 B.R. at 777. Because the facts of this

-15-

case do not support the bankruptcy court's finding, it is reversed. *In re Eagle-Picher Indus., Inc.*, 285 F.3d at 529.

The lower court found that Mr. Thompson's 401(k) loan was not made in contemplation of bankruptcy, but was taken out nineteen months prior to the Thompsons' bankruptcy petition, "in an effort to address the family's continued and worsening financial difficulties." *In re Thompson*, 350 B.R. at 777. Further, the court found that the only way Mr. Thompson could terminate his obligation to repay the loan was to either quit his job, which would be financially irresponsible, or repay the loan in full, which would be financially impossible. *Id.* at 777-78. As a result, the court held that "[u]nder the specific circumstances in this case, [Mr. Thompson's] 401(k) repayment obligation constitutes 'special circumstances . . . that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.'" *Id.* at 778.

The lower court erroneously held that Mr. Thompson's obligation to repay the 401(k) loan constitutes special circumstances. "Special circumstances," as evidenced by the examples given in the statutory text, refers to circumstances which require a debtor to incur additional expenses or adjustments to his current monthly income. As another court recently wrote, "the plain language of section 707(b)(2)(B) is clear – for a debtor to successfully obtain an additional expense or adjustment of [current monthly income], she must demonstrate a special circumstance which leaves her with no reasonable alternative but to incur the expense or cause the income adjustment." *In re Haman*, No. 06-10857, — B.R. —, 2007 WL 1175532 at *5 (Bankr. D.Del. April 20, 2007). In other words, an obligation to repay a loan is not a "special

-16-

circumstance," but the circumstances that led to taking that loan may be "special" under § 707(b)(2)(B)(i).

To establish "special circumstances," the debtors must itemize each additional expense, provide documentation for such expense, and provide "a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." § 707(b)(2)(B)(ii). The Thompsons have failed to do any of these things. In addition, it is plain that the circumstances that led Mr. Thompson to borrow from his retirement plan were not "special," but instead were the result of the Thompsons' longstanding general inability to keep up with their obligations to creditors. A search of the record reveals only that the 401(k) loan proceeds were used to pay for credit card debts, and the credit cards were used to purchase ordinary household and personal goods, such as clothing and food. (Bankr. Evidentiary Hr'g. Tr., 15, May 12, 2006.) This was also the second 401(k) loan Mr. Thompson took within a five year period, with no evidence or explanation of any "special circumstances" that caused him to take either loan. *Id*. at 9.) When asked when the Thompsons' financial difficulties began, Mr. Thompson did not detail any special circumstances that caused the Thompsons to fall behind in their obligations to creditors, instead testifying that "it's always been kind of difficult to pay the bills, probably 30 years worth." *(Id*. at 11.)

Retirement plan loans are neither extraordinary nor rare; many individuals take loans for many different reasons, and they are all required to repay the loans. Without more, a situation as common as the withdrawal of one's retirement funds cannot be a "special circumstance" within the accepted definition of this term. In the absence of any evidence indicating that the circumstances under which a debtor has borrowed money from his retirement

-17-

account was "special," it is an abuse of discretion for a court to hold that either a 401(k) loan or its repayment is a "special circumstance" under § 707(b)(2)(B)(i).

**V.**

The 2005 Act signaled a sea change in the bankruptcy world. Under the prior regime, nearly all debtors obtained a complete discharge under Chapter 7. Now, any debtor who is likely to have the ability to repay even a small portion of his or her debts at any time over the next five years will have to participate in a partial repayment plan under Chapter 13. The result in this case is consistent with the intent of Congress in changing the law, while maintaining the favorable treatment accorded 401(k) loan repayments.

Should the Thompsons re-file under Chapter 13, Mr. Thompson's 401(k) loan repayments of $615.00 per month will be deducted from his income in determining his repayment plan. In other words, he will be permitted to repay his 401(k) loan before repaying creditors. Once he has repaid his 401(k) loan, however, he will have additional funds available to partially repay his creditors. The Trustee calculated that the Thompsons are likely to be able to repay more than $21,000.00 to their unsecured creditors before the end of a five-year plan. I believe that the law therefore now requires that the Thompsons proceed under Chapter 13, not under Chapter 7. This result is fair, both to the Thompsons and to their creditors.

Accordingly, because the filing of the Chapter 7 petition in this case raises a presumption of abuse which the debtors have failed to rebut, the ruling of the bankruptcy court is hereby **REVERSED**.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     June 29, 2007*
**Dan Aaron Polster**
**United States District Judge**

-18-